David K. Bowles (State Bar No. 210986)
BOWLES & JOHNSON PLLC
14 Wall Street, 20th Floor
New York, NY 10005
Telephone: (212) 390-8842
Facsimile: (866) 844-8305
E-mail: david@bojo.law

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| VIKRAM KURIYAN<br><br>Plaintiff,<br><br>v.<br><br>JOEL SCHREIBER and WATERBRIDGE CAPITAL, LLC,<br><br>Defendants. | Case No.<br><br>**COMPLAINT** |

Plaintiff Vikram Kuriyan ("Kuriyan" or "Plaintiff"), brings suit against defendants Joel Schreiber ("Schreiber") and Waterbridge Capital, LLC ("Waterbridge") (together "Defendants") and alleges, upon information and belief, except for the allegations that are made on personal knowledge, as follows:

## THE PARTIES

1. At all times relevant to this action, Schreiber was and is a resident of New York County, New York.

2. At all times relevant to this action, Kuriyan was and is a resident of the State of New Jersey and India, and regularly transacts business in New York County, New York.

3. At all times relevant to this action, Waterbridge was and is a domestic limited liability company organized under the laws of the State of New York, having its principal place of business in New York County, New York.

**JURISDICTION**

4. This Court has federal question jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 18 U.S.C. § 1694(a) and 18 U.S.C. § 1343.

5. Venue is proper in this Court pursuant to 18 U.S.C. § 1965 and 28 U.S.C. § 1391(b), (c), and (e).

**DEFINITIONS**

6. As used in this Complaint, "mail", "mails", "mailed", "mailing", or "letter" includes the use of these terms as used in 18 U.S.C. § 1341.

7. As used in this Complaint, "wire", "wires", "wired", "wiring", or "wire communication" or "telephone" includes the use of these terms as used in 18 U.S.C. § 1343.

8. As used in this Complaint, "fictitious", "false", or "assumed title", "name", or "address or name other than his own proper name", includes the use of these terms as used in 18 U.S.C. § 1342.

9. As used in this Complaint, "wire", "radio", or "transmits or causes to be transmitted by means of wire", "interstate or foreign commerce" includes the use of these terms as used in 18 U.S.C. § 1343.

10. As used in this Complaint, "financial institution", "monies", "funds", "credits", "assets", "securities", or "other property owned by, or custody or control of, a financial institution", includes the use of these terms as used in 18 U.S.C. §1344.

11. As used in this Complaint, "attempts", or "conspires", "conspiracy" includes the use of these terms as used in 18 U.S.C. §1349.

## BACKGROUND

12. Schreiber is a prominent and sophisticated New York City real estate developer, lender and private equity and venture investor.

13. Schreiber has invested, as an example, in the building in Williamsburg in which Apple maintains its store, the Woolworth Building, and One Court Square.

14. Schreiber is also the founding investor in WeWork Inc., a popular co-working company.

15. Schreiber is also a major investor in Forefront Partners LLC ("Forefront"), a relevant non-party, as discussed below.

16. Schreiber founded Waterbridge in 2006 as a vehicle for his investments.

17. His company, Waterbridge Capital, states on its website, www.waterbridge.com, as follows:

> Since 2000, Waterbridge Capital has established itself as a prominent real estate investment firm based in New York City. With strategic joint venture partners, Waterbridge has over 3.0 million square feet of assets under management valued at a market capitalization of over $2.0 billion.

18. Schreiber, using Waterbridge as a vehicle, has concocted a scheme to take advantage of the New York laws on usury, as described below.

19. In particular, Schreiber has realized that the law penalizes parties who loan money at rates of interest considered usurious under New York law, and has made a practice of inducing people to loan him money at rates of interest that he intentionally sets as usurious, knowing that the law will not require him to repay such loans.

20. For example, Schreiber borrowed money from Port Royal – NCM, LLC, and intentionally set the rate of interest at a usurious rate, in the full knowledge that he would not have to repay the loan because the rate of interest was usurious.

21. Schreiber made a practice of obtaining such loans and not repaying them, frequently using Waterbridge as a vehicle for such loans.

22. Plaintiff and Schreiber have been business associates since approximately 2011.

23. Plaintiff and Schreiber were also friends, or so Plaintiff considered Schreiber to be.

24. On or around June of 2013, Schreiber approached Plaintiff and proposed a short-term investment/loan, which Schreiber represented would be for the purpose of bridge financing for Defendants' real estate investments.

25. Plaintiff is not a sophisticated lender, and is not in the business of making such loans.

26. In June of 2013, Schreiber proposed, and ultimately received, a loan/investment from Plaintiff in the amount of $100,000, to be fully repaid in 3 months, so that $15,000 as a fee would be paid (the "First Loan").

27. Unbeknownst to Plaintiff, the terms of the First Loan as proposed by Schreiber were usurious under New York law, and therefore unenforceable.

28. Schreiber, as a sophisticated borrower of money, was aware that the First Loan was unenforceable, and intentionally lured Plaintiff into entering into the First Loan with this knowledge.

29. Schreiber did not repay the First Loan.

30. Rather, Schreiber falsely stated to Plaintiff, on or about December of 2014, that Defendants would convert the First Loan to an investment with a right to profits in property at 119 W. 25th Street, New York, New York.

31. Schreiber never provided Plaintiff with the necessary documentation to convert the loan.

32. In March 2015, Schreiber sourced and personally guaranteed an additional loan from Plaintiff, which was actually repaid in full and more, thus gaining Plaintiff's trust for future loans.

33. In March and April of 2015, Schreiber proposed terms under which Defendants would, and did, borrow $100,000 and $250,000 from Plaintiff (later bundled into the "Second Loan") structured by Schreiber as an investment. Once again, Schreiber set terms that he knew would be usurious, and therefore unenforceable under New York law.

34. The Second Loan was made by Plaintiff to Waterbridge in the amount of $350,000. To purportedly secure the investment/loan, Schreiber pledged a property as collateral that he did not in fact own at the time.

35. Defendants did not repay the Second Loan to Plaintiff.

36. Schreiber did not provide formal written agreements for the First Loan and Second Loan. Plaintiff repeatedly requested such written agreements, and Schreiber refused to provide them.

37. On or about April of 2016, Schreiber proposed to, and did, borrow $100,000 from Plaintiff (the "Third Loan"). Once again, Schreiber set terms that he knew would be usurious, and therefore unenforceable under New York law.

38. Defendants did not repay the Third Loan.

39. In or about June of 2016, Schreiber requested that Plaintiff issue Defendants, and Plaintiff did issue, a loan in the amount of $100,000 (the "Fourth Loan"). Once more, Schreiber intentionally crafted the Fourth Loan on usurious terms. However, as an additional inducement for Plaintiff to issue another loan, Schreiber purported to pledge additional collateral to secure the Fourth Loan, as well as the First, Second, and Third Loans. Part of the collateral issued was stock in WeWork. Unbeknownst to Plaintiff, this collateral was already pledged to others in its entirety.

40. Later in June of 2016, Schreiber repaid $100,000 to Plaintiff. However, Schreiber did not pay a fee on the Fourth Loan, nor did Schreiber repay the other loans.

41. In December of 2016, Schreiber borrowed another $100,000 from Plaintiff (the "Fifth Loan," and together with the First Loan, Second Loan, Third Loan, and Fourth Loan, the "Loans"). Once more Schreiber intentionally crafted the terms of the Fifth Loan to be usurious.

42. Once more, Schreiber purported to collateralize the Fifth Loan and modified the previous Loans to be convertible into WeWork stock.

43. In August 2017, Schreiber sold $44.6 million worth of WeWork stock, but despite his promises, did not provide Plaintiff any of the proceeds.

44. In December 2018, Defendant emailed Plaintiff with a financial statement attesting to a minimum net worth of $100 million – in a continued attempt to assure Plaintiff of Defendants' creditworthiness and ability to pay on the previous transactions.

45. Upon information and belief, Schreiber sold additional WeWork stock in 2019 and 2021 and did not provide Plaintiff any of the proceeds.

46. In 2019, Schreiber did not disclose any of his prior sales and instead provided additional documentation confirming his pledge of WeWork stock, accounting spreadsheets and

6

promises to fund "in cash or stock" in order to continue to delay Plaintiff's attempts to collect the obligations.

47. In September 2019, Schreiber secretly pledged the entirety of his WeWork holdings to Goldman Sachs to borrow tens of millions of dollars from Goldman Sachs.

48. Instead of clearing his debt to Plaintiff, Schreiber made a paltry set of payments to entice Plaintiff into delaying litigation.

49. In September of 2019, Schreiber made partial repayments to Plaintiff in the amounts of $100,000, $25,000, and $20,000, but did not satisfy the principal of the Loans, much less the promised interest.

50. Defendants currently owe in excess of $2.5 million to Plaintiff.

51. Since Schreiber has failed to repay the Loans, Plaintiff has demanded that Defendants turn over the collateral: the stock in WeWork. Plaintiff made said demands repeatedly up to about September of 2019.

52. Defendants have refused to turn over the WeWork stock collateral despite verbal promises and texts promising to do so.

53. Plaintiff has learned since that time that Schreiber used his stake in WeWork to collateralize many other loans, thus double or triple pledging the stock.

54. When Plaintiff attempted to enforce the Loans in Kuriyan v. Schreiber et al., Index No. 655936/2019 (N.Y. Sup. Ct.) (the "NY Action") Defendants here successfully moved to dismiss that action.

55. Defendants motion to dismiss the NY Action, made on June 23, 2020, relied on the argument that each of the Loans – the usurious terms of which Schreiber proposed, crafted and drafted - were usurious and therefore unenforceable.

56. Prior to Defendants' motion to dismiss the New York Action, Plaintiff was unaware that the terms of the Loans could be interpreted as usurious, or could be unenforceable as a result, or that Defendants would use the usurious terms they proposed as a mechanism to avoid repaying the amounts owed to Plaintiff and others.

57. Prior to Defendants' motion to dismiss the New York Action, Plaintiff relied on Schreiber's superior knowledge and expertise in lending, real estate and private investments.

58. Plaintiff also relied upon Shreiber's friendship.

59. Schreiber also lured Plaintiff into continuing the relationship by promising that Plaintiff could and would be involved in a family office joint venture managing Schreiber's wealth.

60. As stated above, Schreiber, acting both on his own behalf and that of Waterbridge, intentionally set the terms of each of the Loans to be usurious.

61. He did so knowing that the courts would not enforce the terms of the Loans.

62. He did so with the intent, at the time he induced each of the Loans, of not repaying all of the Loans.

63. Defendants have made a pattern and practice of inducing unwitting parties to loan them money at usurious rates, knowing that Defendants would not be required to repay such money because the courts would not enforce such loans.

64. Defendants have made a pattern and practice of pledging collateral – including without limitation Schreiber's stock in WeWork – to secure multiple loans from multiple parties, including the Loans to Plaintiff.

65. Defendants have made a pattern and practice of delaying legal action by making additional concessions, partial payments, and inducements of greater profits to delay legal action.

8

66. Defendants' tactic is to repeatedly delay legal action in an attempt to have the relevant statutes of limitations expire.

67. Defendants have used both the United States Postal Service and emails conducted through the internet to induce and facilitate such loans to third parties and the Loans to Plaintiff.

68. These third parties include but are not limited to Port Royal-NCM, LLC, Forefront Income Trust, Forefront Partners, Live Primary, Salhit Shtrozberg, and Bradley Reifler.

**FACTS RELEVANT TO CIVIL RICO CLAIM**

69. An "Enterprise" exists here within the meaning of 18 U.S.C. § 1961.

70. The Enterprise consists of Schreiber, Waterbridge, and all of the officers, employees, directors, and shareholders of Waterbridge, all of whom participated in the operation and management of each aspect of this Enterprise, including the conduct of unlawful affairs within the meaning of 18 U.S.C. § 1961(1)(B), 1341, and 1343.

71. To wit, the Enterprise committed a fraud and swindle within the meaning of 18 U.S.C. § 1341 by repeatedly offering to borrow money from Plaintiff upon terms that the Enterprise knew to be usurious, in the sure knowledge that the Enterprise would not be required to repay such Loans.  The Enterprise further committed a fraud and swindle within the meaning of 18 U.S.C. § 1341 by repeatedly promising to secure the Loans with collateral, including but not limited to the stock of WeWork, while knowing that (1) the Enterprise would not provide such collateral; and (2) the Enterprise had already pledged the same collateral elsewhere, and to other parties.  The Enterprise used the United States mail for these purposes.

72. Further, the Enterprise committed fraud by wire, radio, or television within the meaning of 18 U.S.C. § 1343 by communicating and furthering the frauds referenced in the preceding paragraph by use of emails and the internet.

73. The Enterprise was and is continuous, and its regular way of doing business is to induce third parties to make loans to the Enterprise, or to a member of the Enterprise, and to set the terms at usurious rates, in the knowledge that the Enterprise cannot be compelled to repay the loans because of the provisions of New York law. The further regular way of the Enterprise doing business is to fraudulently offer collateral to secure both past and future loans, including but not limited to the WeWork stock, as a way of fending off collection efforts by lenders, including but not limited to Plaintiff.

74. Some members of the Enterprise, including but not limited to Schreiber, acted with culpability in their scheme. Other members of the Enterprise, potentially including other officers, directors, and employees of Waterbridge, may or may not have been aware of the Enterprise's fraudulent schemes.

75. At all times relevant to this complaint, as previously alleged herein and continuing up to the date of this complaint, the Enterprise defrauded both Plaintiff and other third parties by making false statements by means of electronic and postal mailings.

76. In particular, and without limitation, Defendants, acting as the Enterprise, did cause the following electronic mailings to be sent:

    a. An email dated April 20, 2015 from Nanci Hom of Waterbridge to Plaintiff with wire instructions for certain of the loans at issue.

    b. Emails dated April 1, 2016 from Schreiber to Plaintiff regarding a $100,000 loan from Plaintiff.

    c. An email dated June 10, 2016 from Lisa Izkiayayeva of Waterbridge to Plaintiff regarding the loans at issue.

    d. An email dated June 10, 2016 from Schreiber to Plaintiff regarding one of the loans at issue.

    e. An email dated April 6, 2017 from Schreiber to Plaintiff regarding capital gains purportedly to repay the loans at issue.

    f. An email dated April 18, 2016 Schreiber to Plaintiff regarding the purported plan to involve Plaintiff in wealth management.

    g. An email dated October 24, 2018, with subsequent follow up emails, from Charles Valentino of Waterbridge to Plaintiff, denying profits from a real estate investment as a basis for failing to repay the loans at issue.

    h. An email dated August 22, 2019 from Avi Rosen of Waterbridge to Plaintiff regarding the outstanding loans at issue.

    i. Numerous other emails between Schreiber and/or Waterbridge and Plaintiff regarding the loans at issue.

77.    The Defendants, acting as the Enterprise, had no intention of ever repaying the Loans or properly pledging the collateral, or fulfilling their obligations to turn over the collateral upon the failure to repay the loans.

78.    The forgoing predicate acts, taken together, constitute a pattern of unlawful activity within the meaning of 18 U.S.C. § 1961(1)(B). The predicate acts are both related and continuous since June of 2013, at least. The acts are connected to one another as part of a scheme to accomplish a uniform purpose of defrauding lenders, including but not limited to

Plaintiff. The repeated nature of this scheme and the threat of similar conduct occurring in the future makes the acts continuous.

79. The Defendants acted at all relevant times corruptly, with malice, intent, and knowledge, and in reckless disregard of Plaintiff's rights.

80. At all relevant times, the Enterprise as defined herein was engaged in interstate commerce in various states, including New York and New Jersey, and overseas in India.

81. The Defendants, and the Enterprise, at all relevant times, conspired with each other and with others as yet unknown to engage in the various activities set forth herein, and aided and abetted one another, all in violation of the statutes set forth herein, and in violation of 18 U.S.C. § 1962(d).

82. Each of the Defendants agreed to the operation of the conspiracies to defraud, cheat, steal, and convert the property of Plaintiff and other third parties.

**FIRST CLAIM FOR RELIEF**
**Violation of 18 U.S.C. § 1962**
**(Against all Defendants)**

83. Plaintiff repeats and realleges the prior allegations as if set forth in full herein.

84. Plaintiff is a "person" under 18 U.S.C. §§ 1961(3).

85. Defendants are each "persons" under 18 U.S.C. §§ 1961(3) and 1962(c).

86. Defendants, taken together, along with the officers, directors, employees and shareholders of Waterbridge, constitute an "Enterprise" within the meaning of 18 U.S.C. §§ 1961(4) and 1962(c), which Enterprise was engaged in interstate commerce at all times relevant to this complaint.

87. Each of the Defendants was associated with this Enterprise, and has conducted and participated in the management and operation of the Enterprise, and thereby participated in the various frauds and other wrongs alleged herein, including but not limited to:

   a. Multiple, repeated and continuous instances of mail fraud in violation of 18 U.S.C. § 2 and 1341; and

   b. Multiple, repeated and continuous instance of wire fraud in violation of 18 U.S.C. § 2 and 1343.

88. Plaintiff suffered injury to his business and property within the meaning of 18 U.S.C. § 1964(c) by reason of the violation of the statutes set forth above as committed by Defendants.

## DEMAND FOR JURY TRIAL

89. Plaintiff demands a trial by jury on any and all issues triable by right.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment as follows:

   a. Actual damages incurred by Plaintiff owing to the wrongful acts and omissions of Defendants herein; and

   b. Treble damages, in addition to the cost of investigating and prosecuting this suit, and reasonable attorneys' fees and costs pursuant to 18 U.S.C. § 1964(c); and

   c. Equitable relief in the form of assignment of the WeWork stock to Plaintiff in an amount that the Court determines to be appropriate;

   d. Reasonable attorneys' fees and costs;

   e. Pre-judgment and post-judgment interest on damages incurred; and

    f.  Any other and further relief as this court deems just and proper to prevent and restrain further violation of 18 U.S.C. § 1962, and to end the ongoing wrongful conduct of Defendants.

Dated: March 21, 2023

                                            BOWLES & JOHNSON PLLC

                                            _____
                                            David K. Bowles
                                            14 Wall Street, 20th Floor
                                            New York, New York 10005
                                            T: (212) 390-8842
                                            F: (866) 844-8305
                                            E: David@BoJo.Law