UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| VIKRAM KURIYAN,<br><br>                      Plaintiff,<br><br>         -against-<br><br>JOEL SCHREIBER and WATERBRIDGE CAPITAL, LLC<br><br>                      Defendants. | Case No. 23-cv-2381 (JLR) |

### DECLARATION OF ELIAD S. SHAPIRO IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE COMPLAINT

I, Eliad S. Shapiro, hereby declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the following is true and correct:

1. I am a Partner at the law firm of Moses & Singer LLP, and am admitted to practice law in the State of New York and the Southern District of New York. My firm represents Defendants Joel Schreiber ("Schreiber") and Waterbridge Capital LLC ("Waterbridge") in the above-captioned case. I make this declaration in support of Defendants' Motion to Dismiss the Complaint. I have personal knowledge of the facts set forth below. In some instances, my knowledge is based on my review of records that are submitted herewith as Exhibits and on my involvement as attorney of record for Defendants in the Prior Action (defined herein) that Petitioner commenced in the New York County Supreme Court against Defendants.

2. A true and correct copy of the Complaint in this action is annexed hereto as Exhibit "A."

3. On October 10, 2019, Plaintiff filed suit against Schreiber and Waterbridge in New York State Supreme Court, New York County Commercial Division, in an action captioned

*Kuriyan v. Schreiber and Waterbridge Capital, LLC*, Index No. 655936/2019 (the "Prior Action"). Annexed hereto as Exhibit "B" is a true and accurate copy of Plaintiff's Verified Complaint, electronically filed on the New York State Courts Electronic Filing system ("NYSCEF") as NYSCEF No. 1. Plaintiff's Verification is dated October 2, 2019.

4. Annexed hereto as Exhibit "C" is a true and accurate copy of Plaintiff's Affidavit in Opposition to Defendants' Motion to Dismiss the Prior Action, sworn to by Plaintiff on June 8, 2020, and filed in the Prior Action on the NYSCEF system under NYSCEF No. 19.

5. Annexed hereto as Exhibit "D" is a true and accurate copy of the October 4, 2022 Decision of the Supreme Court of the State of New York, Appellate Division, First Judicial Department in the Prior Action—filed on the NYSCEF system as NYSCEF No. 12 under Case No. 2021-03590 in the Appellate Division—which dismissed Plaintiff's Verified Complaint with prejudice.

6. Annexed hereto as Exhibit "E" is a true and accurate copy of the December 20, 2022 Decision of the Supreme Court of the State of New York, Appellate Division, First Judicial Department in the Prior Action—filed on the NYSCEF system as NYSCEF No. 16 under Case No. 2021-03590 in the Appellate Division—which denied Plaintiff's Motion for Leave to Appeal to the Court of Appeals.

7. Annexed hereto as Exhibit "F" is a true and accurate copy of the April 27, 2023 Decision of the New York State Court of Appeals in the Prior Action—Motion No. 2023-96— which denied Plaintiff's Motion for Leave to Appeal to the Court of Appeals.

8. Annexed hereto as Exhibit "G" is a true and accurate copy of the opening brief of Defendants-Appellants submitted before the Supreme Court of the State of New York, Appellate

Division, First Judicial Department in the Prior Action—filed on the NYSCEF system as NYSCEF No. 5 under Case No. 2021-03590 in the Appellate Division.

9. Annexed hereto as Exhibit "H" is a true and accurate copy of the brief of Plaintiff-Respondent submitted before the Supreme Court of the State of New York, Appellate Division, First Judicial Department in the Prior Action—filed on the NYSCEF system as NYSCEF No. 8 under Case No. 2021-03590 in the Appellate Division.

10. Annexed hereto as Exhibit "I" is a true and accurate copy of the reply brief of Defendants-Appellants submitted before the Supreme Court of the State of New York, Appellate Division, First Judicial Department in the Prior Action—filed on the NYSCEF system as NYSCEF No. 10 under Case No. 2021-03590 in the Appellate Division.

11. A true and accurate copy of the Record on Appeal submitted before the Supreme Court of the State of New York, Appellate Division, First Judicial Department in the Prior Action is available on the NYSCEF system as NYSCEF No. 4 under Case No. 2021-03590 in the Appellate Division.

12. Below is a table comparing the allegations of the Complaint in this action to the allegations Plaintiff made in the Prior Action's Verified Complaint. The contents of the comparison table are true and correct excerpts from Exhibits "A" and "B," annexed hereto. The table is intended to be illustrative and non-exhaustive.

| Federal Complaint | Prior Action |
|---|---|
| "In June of 2013, Schreiber proposed, and ultimately received, a loan/investment from Plaintiff in the amount of $100,000, to be fully repaid in 3 months, so that $15,000 as a fee would be paid (the 'First Loan')." <br><br> Compl. ¶ 26. | "On June 28, 2013, Kuriyan, pursuant to an oral 'handshake' agreement, transferred $100,000 in principal to Schreiber under the following terms 1) the loan was to be for three-months 2) the agreed upon fee was $5,000 per month, such that Schreiber was to return the full amount due and owing of $115,000 at the close of the agreed upon three-month loan term (the 'First Loan')." <br><br> Ex. "B" ¶ 10. |

| | |
|---|---|
| "Schreiber did not repay the First Loan.  Rather, Schreiber falsely stated to Plaintiff, on or about December of 2014, that Defendants would convert the First Loan to an investment with a right to profits in property at 119 W. 25th Street, New York, New York."<br><br>Compl. ¶¶ 29–30. | "At the close of the three-month loan term Schreiber failed to repay any portion of the loaned principal or fees pursuant to the agreed upon terms. Six months later, instead of issuing repayment, Schreiber approached Kuriyan and asked to modify the terms of the loan from a straight lending transaction to a convertible equity loan wherein Schreiber offered to convert the debt into equity in the investment property 119 W 25th Street, New York, New York and would thereby pass on the upside from his investment to Kuriyan."<br><br>Ex. "B" ¶ 12. |
| "Schreiber never provided Plaintiff with the necessary documentation to convert the loan."<br><br>Compl. ¶ 31. | "Despite Kuriyan agreeing to Schreiber's request to convert the debt to equity, Kuriyan was never provided with the documentation memorializing that conversion and/or transfer to equity, nor was Kuriyan provided with any stock certificates or investor/partner agreement."<br><br>Ex. "B" ¶ 13. |
| "In March 2015, Schreiber sourced and personally guaranteed an additional loan from Plaintiff, which was actually repaid in full and more, thus gaining Plaintiff's trust for future loans."<br><br>Compl. ¶ 32. | "Thereafter, on March 10, 2015, Schreiber enticed Kuriyan to invest $250,000 in a short-term loan that was personally guaranteed by Schreiber (the 'Satisfied Loan')."<br><br>Ex. "B" ¶ 21.<br><br>Kuriyan was paid in full on the Satisfied Loan including full payment of late fees and all accrued interest at the agreed upon terms. Schreiber's enforcement and assurance of performance on the Satisfied Loan served to impart confidence and gain Kuriyan's further trust, and was, upon information and belief, in furtherance of the larger scheme to procure additional amounts of money from Kuriyan.<br><br>Ex. "B" ¶ 53. |
| "In March and April of 2015, Schreiber proposed terms under which Defendants would, and did, borrow $100,000 and $250,000 from Plaintiff (later bundled into the 'Second Loan') structured by Schreiber as an investment. Once again, Schreiber set terms that he knew would be usurious, and therefore unenforceable under New York law.  The Second Loan was made by Plaintiff to Waterbridge in the amount of $350,000. To purportedly secure the investment/loan, Schreiber pledged a property as collateral that he did not in fact own at the time."<br><br>Compl. ¶ 33–34. | "Subsequently, late in March of 2015 . . . Schreiber once again contacted Kuriyan seeking to raise short-term bridge financing to be used by Schreiber in connection with a real estate investment known as 'Berry Street.'"<br><br>Ex. "B" ¶¶ 22.<br><br>"Schreiber offered Kuriyan attractive lending terms to induce Kuriyan to agree to provide additional short-term financing to Schreiber in the amount of $350,000 (the 'Second Loan')."<br><br>Ex. "B" ¶ 23–26.<br><br>"Principal in the amount of $100,000 was transferred from Kuriyan to Schreiber on March 30, 2015 and principal in the amount of $250,000 was transferred from Kuriyan to Schreiber on April 22, 2015."<br><br>Ex. "B" ¶ 27. |

| | |
|---|---|
| | "As part of the Second Loan agreement, Schreiber agreed to pay a $35,000 fee for the one-month loan and the Second Loan was further secured with Schreiber pledging the property held within the 'Berry Street Portfolio' to be collateral."<br><br>Ex. "B" ¶ 30. |
| "On or about April of 2016, Schreiber proposed to, and did, borrow $100,000 from Plaintiff (the 'Third Loan'). Once again, Schreiber set terms that he knew would be usurious, and therefore unenforceable under New York law."<br><br>Compl. ¶ 37. | "On or about April 13, 2016 . . . Schreiber received the proceeds of the Third Loan from Kuriyan, in the amount of $100,000. The Third Loan was intended to be a short-term bridge loan with the expectation of the loan being repaid within one month's time and with a $5,000 fee."<br><br>Ex. "B" ¶ 45. |
| "In or about June of 2016, Schreiber requested that Plaintiff issue Defendants, and Plaintiff did issue, a loan in the amount of $100,000 (the 'Fourth Loan'). Once more, Schreiber intentionally crafted the Fourth Loan on usurious terms. However, as an additional inducement for Plaintiff to issue another loan, Schreiber purported to pledge additional collateral to secure the Fourth Loan, as well as the First, Second, and Third Loans. Part of the collateral issued was stock in WeWork. Unbeknownst to Plaintiff, this collateral was already pledged to others in its entirety."<br><br>Compl. ¶ 39. | "On or about June 10, 2016, Schreiber requested and negotiated a further loan in the amount of $100,000 from Kuriyan (the 'Fourth Loan'). As part of the bargained consideration for this loan Kuriyan sought and received additional pledges of collateral to secure this loan as well as all earlier loans and all loans going forward, by and between Kuriyan and Schreiber."<br><br>Ex. "B" ¶ 62.<br><br>"Additionally, Kuriyan and Schreiber agreed in writing that the Fourth Loan, along with all other, both prior and future loans by and between Kuriyan and Schreiber, were to be collateralized by the WeWork Stock owned by Schreiber."<br><br>Ex. "B" ¶ 65. |
| "Later in June of 2016, Schreiber repaid $100,000 to Plaintiff. However, Schreiber did not pay a fee on the Fourth Loan, nor did Schreiber repay the other loans."<br><br>Compl. ¶ 40. | "On or about June 29, 2016, Schreiber issued funds in the amount of $100,000 as a repayment to Kuriyan without paying the to be determined fee that had been customarily calculated as a percentage rate of 5% or 10% of the principal balance for a one-month term loan."<br><br>Ex. "B" ¶ 69. |
| "In December of 2016, Schreiber borrowed another $100,000 from Plaintiff (the 'Fifth Loan,' and together with the First Loan, Second Loan, Third Loan, and Fourth Loan, the 'Loans'). Once more Schreiber intentionally crafted the terms of the Fifth Loan to be usurious."<br><br>Compl. ¶ 41. | "On or about December 9, 2016 . . . Kuriyan agreed to lend $100,000 to Schreiber (the 'Fifth Loan'). The terms of the Fifth Loan were as follows: 1) the loan was due for repayment on December 19, 2016 (ten days after the loan originated); 2) an initial loan fee of $5,000 was to be paid to Kuriyan; and 3) if the loan was not repaid by December 19, 2016 (ten days after origination) then interest would accrue at the maximum rate allowable by law. The Fifth Loan was also personally guaranteed by Schreiber and was also collateralized as a first lien upon the WeWork Stock owned by Schreiber."<br><br>Ex. "B" ¶ 70. |

| | |
|---|---|
| "Once more, Schreiber purported to collateralize the Fifth Loan and modified the previous Loans to be convertible into WeWork stock."<br><br>Compl. ¶ 42. | "As a condition of the Fifth Loan, it was further agreed that this and all prior loans extended by Kuriyan to Schreiber and/or Waterbridge would be further collateralized by Schreiber's WeWork Stock."<br><br>Ex. "B" ¶ 71. |
| "In August 2017, Schreiber sold $44.6 million worth of WeWork stock, but despite his promises, did not provide Plaintiff any of the proceeds."<br><br>Compl. ¶ 43. | "Upon information and belief, Schreiber had several opportunities to liquidate portions of his WeWork holdings – which on at least one occasion he did – but he never discharged his debt to Kuriyan."<br><br>Ex. "B" ¶ 81. |
| "In September of 2019, Schreiber made partial repayments to Plaintiff in the amounts of $100,000, $25,000, and $20,000, but did not satisfy the principal of the Loans, much less the promised interest."<br><br>Compl. ¶ 49. | "[O]n September 25, 26 and 27, 2019, Schreiber issued funds in the amount of $100,000, $25,000 and $20,000 to Kuriyan as additional partial repayment of collective amounts due and owing . . . . Those payments did not cure Schreiber's default or his ongoing breach of the agreements."<br><br>Ex. "B" ¶ 89. |
| "Defendants currently owe in excess of $2.5 million to Plaintiff."<br><br>Compl. ¶ 50. | "At present, Schrieber [sic] owes to Kuriyan unpaid loan balances consisting of principal, fees and interest in an amount to be determined at trial, but in any event, no less than $2,500,000."<br><br>Ex. "B" ¶ 91. |
| "Plaintiff has learned since that time that Schreiber used his stake in WeWork to collateralize many other loans, thus double or triple pledging the stock."<br><br>Compl. ¶ 53. | "Upon information and belief, Schreiber has posted his WeWork stock as collateral with multiple other institutions and individuals likely 'double-or-triple-pledging' the same collateral."<br><br>Ex. "B" ¶ 82. |
| Defendants "repeatedly offer[ed] to borrow money from Plaintiff upon terms that [they] knew to be usurious, in the sure knowledge that [they] would not be required to repay such loans."<br><br>Compl. ¶ 71. *See also, Id.* ¶¶ 27–28, 33, 37, 39, 41. | "Mr. Schreiber has . . . engaged in a pattern and practice of defrauding lenders and investors by employing the strategy of offering to take loans under terms that would otherwise be unenforceable as a tactic to avoid paying his debts and the interest associated therewith."<br><br>Ex. "C" ¶¶ 8, 10. |

Dated: July 26, 2023  
      New York, New York

                                                              _____  
                                                              Eliad S. Shapiro