David K. Bowles (State Bar No. 210986)
BOWLES & JOHNSON PLLC
14 Wall Street, 20th Floor
New York, NY 10005
Telephone: (212) 390-8842
Facsimile: (866) 844-8305
E-mail: david@bojo.law

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| VIKRAM KURIYAN <br><br> Plaintiff, <br><br> v. <br><br> JOEL SCHREIBER <br><br> Defendant. | Case No. **1:23-cv-02381 (JLR)** <br><br> **FIRST AMENDED COMPLAINT** |

Plaintiff Vikram Kuriyan ("Kuriyan" or "Plaintiff"), brings suit against defendant Joel Schreiber ("Schreiber" or "Defendant") and alleges, upon information and belief, except for the allegations that are made on personal knowledge, as follows:

<u>**THE PARTIES**</u>

1.      At all times relevant to this action, Schreiber was and is a resident of New York County, New York.

2.      At all times relevant to this action, Kuriyan was and is a resident of the State of New Jersey and India, and regularly transacts business in New York County, New York.

3.      At all times relevant to this action, Waterbridge Capital LLC (hereinafter "Waterbridge") was and is a domestic limited liability company organized under the laws of the State of New York, having its principal place of business in New York County, New York.

## JURISDICTION

4.      This Court has federal question jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 18 U.S.C. § 1694(a) and 18 U.S.C. § 1343.

5.      Venue is proper in this Court pursuant to 18 U.S.C. § 1965 and 28 U.S.C. § 1391(b), (c), and (e).

## DEFINITIONS

6.      As used in this Complaint, "mail", "mails", "mailed", "mailing", or "letter" includes the use of these terms as used in 18 U.S.C. § 1341.

7.      As used in this Complaint, "wire", "wires", "wired", "wiring", or "wire communication" or "telephone" includes the use of these terms as used in 18 U.S.C. § 1343.

8.      As used in this Complaint, "fictitious", "false", or "assumed title", "name", or "address or name other than his own proper name", includes the use of these terms as used in 18 U.S.C. § 1342.

9.      As used in this Complaint, "wire", "radio", or "transmits or causes to be transmitted by means of wire", "interstate or foreign commerce" includes the use of these terms as used in 18 U.S.C. § 1343.

10.      As used in this Complaint, "financial institution", "monies", "funds", "credits", "assets", "securities", or "other property owned by, or custody or control of, a financial institution", includes the use of these terms as used in 18 U.S.C. §1344.

## BACKGROUND

11.      Schreiber is a prominent and sophisticated New York City real estate developer, lender and private equity and venture investor.

12.     Schreiber has invested, as an example, in the building in Williamsburg in which Apple maintains its store, the Woolworth Building, and One Court Square.

13.     Schreiber is also the founding investor in WeWork Inc., a popular co-working company.

14.     Schreiber is also a major investor in Forefront Entities ("Forefront"), a relevant non-party, as discussed below.

15.     Schreiber founded Waterbridge in 2006 as a vehicle for his investments. Schreiber is the CEO of Waterbridge.

16.     Waterbridge states on its website, www.waterbridge.com, as follows:

> Since 2000, Waterbridge has established itself as a prominent real estate investment firm based in New York City. With strategic joint venture partners, Waterbridge has over 3.0 million square feet of assets under management valued at a market capitalization of over $2.0 billion. . . Waterbridge's investment team has more than thirty years of New York City real estate experience.

## SCHEMES TO DEFRAUD

Defendant Schreiber has engaged in at least five different schemes to defraud Plaintiff (and others), and has used e-mails, which are wires in interstate commerce, in furtherance of these schemes.   These schemes involve (1) falsely representing to Plaintiff that loans were converted into an investment with rights to profit in property, thereby causing injury to Plaintiff; (2) the collateral securing Plaintiff's investments/loans with Defendant were already pledged by Schreiber to multiple other parties and/or secreted and/or was economically worthless thereby causing default on the loans; (3) Defendant provided false balance sheets to Plaintiff claiming astounding wealth; (4) Defendant lied that loan proceeds would be used to improve properties when in fact the proceeds are secreted and used by Defendant for his personal use; and (5)

Defendant structured his transactions with Plaintiff (and others) to willfully abuse NY State usury laws.

### Scheme One: Falsely Representing to Plaintiff that Loans Could Be Converted to Investments with Rights to Profit

17.     Schreiber, using Waterbridge and affiliated entities as a vehicle, has concocted a scheme to take advantage of the New York laws on usury, as described below.

19.     In particular, Schreiber has realized that the law penalizes parties who loan money at rates of interest considered usurious under New York law, and has made a practice of inducing people to loan him money at rates of interest that he intentionally sets as usurious, knowing that the law will not require him to repay such loans.

20.     For example, Schreiber borrowed money from Port Royal North Carolina Mutual Reassurance Trust, and intentionally set the rate of interest at a usurious rate, in the full knowledge that he would not have to repay the loan because the rate of interest was usurious.

21.     Schreiber made a practice of obtaining such loans and not repaying them, frequently using Waterbridge, or Waterbridge affiliated companies, as a vehicle for such loans.

22.     Plaintiff and Schreiber have been business associates since approximately 2011.

23.     Plaintiff was recruited through a headhunter to be associated with "Forefront," a set of entities where Schreiber was a major investor and where Waterbridge offices were located for at least 6 years.

24.     Plaintiff and Schreiber were also friends, or so Plaintiff considered Schreiber to be; so much so that Plaintiff and Schreiber agreed, signed documentation, and even opened bank accounts to start a family office where the initial client was Schreibers' astounding wealth.

25.     On or around June of 2013, Schreiber approached Plaintiff and proposed a short-term investment/loan which Schreiber represented would be for the purpose of bridge financing for certain real estate investments.

26.     Despite Plaintiffs' academic credentials and experience managing public mutual fund portfolios, Plaintiff is not a sophisticated lender, and is not in the business of making such investments/loans.

27.     At all times, Plaintiff relied on Schreiber's superior knowledge and expertise in lending, real estate and private equity transactions.

28.     Plaintiff is not familiar with NY law and the intricacies of lending and has a stellar reputation and pristine legal record. In contrast, Schreiber has more than three dozen lawsuits – all asserting cheating of one form or the other.

29.     In June of 2013, Schreiber proposed, and ultimately received, a loan/investment from Plaintiff in the amount of $100,000, to be fully repaid in 3 months, so that $15,000 as a fee would be paid (the "First Loan").

30.     Unbeknownst to Plaintiff, the terms of the First Loan as proposed by Schreiber were usurious under New York law, and therefore unenforceable.

31.     Schreiber, as a sophisticated borrower of money, was aware that the First Loan was unenforceable, and intentionally lured Plaintiff into entering into the First Loan with this knowledge.

32.     Schreiber did not repay the First Loan.

33.     Rather, Schreiber falsely stated to Plaintiff, on or about January 2015, that he would convert the First Loan to an investment with a right to profits in property at 119 W. 25th Street, New York, New York.

34.     Schreiber never provided Plaintiff with the necessary documentation to convert the loan.

35.     On December 10, 2014, Schreiber's COO sent via email a Confidential Private Placement Memorandum, Operating Agreement, and Subscription Agreement for Waterbridge Equities LLC.  Plaintiff believed that under similar documents he was a limited partner, and Schreiber was a general partner, in the investment at issue.

36.     In March 2015, Schreiber sourced and personally guaranteed an additional loan from Plaintiff, which was actually repaid in full and more, thus gaining Plaintiff's trust for future loans.

37.     In March and April of 2015, Schreiber proposed terms under which he would, and did, borrow $100,000 and $250,000 from Plaintiff (later bundled into the "Second Loan") structured by Schreiber as an investment.  Once again, Schreiber set terms that he knew would be usurious, and therefore unenforceable under New York law.

**Scheme Two: Defendant Induced Plaintiff to Make Investments/Loans in Which Collateral Was Pledged to Multiple Other Parties and/or Secreted and/or was Economically Worthless**

38.     Lured by the satisfied loan, a pledge of the underlying Berry Street property and a personal guarantee, Plaintiff was induced to make a Second Loan to Waterbridge in the amount of $350,000.  A memorandum of understanding memorializing the terms dated March 20, 2015 was provided to Plaintiff on April 13, 2016 and secured by the personal guarantee of Schreiber and WB Berry Street (a Waterbridge affiliated company).  To purportedly secure the investment/loan, Schreiber pledged a property as collateral that he did not in fact own at the time.

39.     Schreiber did not repay the Second Loan to Plaintiff.

40.    Schreiber did not provide formal written agreements for the First Loan and now an investment and Second Loan.  Plaintiff repeatedly requested such written agreements, and Schreiber refused to provide them.

41.    On or about April of 2016, Schreiber sourced a fresh loan proposing terms that he knew would be usurious, and therefore unenforceable under New York law. Schreiber wrote up a Memo of Understanding between Plaintiff and subsequent to both parties signing the MOU, Plaintiff wired $100,000 to Waterbridge (the "Third Loan").   The original terms were modified by the signing of the MoU - which did not have a fee. Therefore, this loan could not be usurious (even though Schreiber successfully argued in NY appellate court that this loan was also usurious due to the original intent of a fee).

42.    Schreiber did not repay the Third Loan.

43.    In or about June 10, 2016, Schreiber requested that Plaintiff issue to him, and Plaintiff did issue, a loan in the amount of $100,000 (the "Fourth Loan").  Once more, Schreiber intentionally sourced the Fourth Loan on usurious terms.  However, as an additional inducement for Plaintiff to issue another loan, Schreiber purported to pledge additional collateral to secure the Fourth Loan, as well as the First, Second, and Third Loans.    The terms were not agreed upon at the time the loan was funded and subsequently repaid – the initial fee could have been zero – a non-usurious number as in the Third loan.

44.    Other collateral was purported to be stock in WeWork.  Unbeknownst to Plaintiff, this collateral was already pledged to others in its entirety.  In this regard, the same collateral (WeWork stock, see further below) had been pledged to Adam Neumann (March 2015), Sam Ben Abraham (September 20, 2012); and Port Royal North Carolina Mutual (December 1, 2015). This WeWork stock was also pledged to others after the extension of credit to plaintiff on June

10, 2016; Hutton Capital (January 10, 2019); and Goldman Sachs (May 31, 2017) (see para. 52below).

45.     Documents show that Schreiber on September 28, 2016 sold 99% of his holdings of property on Berry Street, which had been pledged as collateral on loans by Plaintiff and sold without any disclosure to Plaintiff.

46.     Later in June of 2016, Schreiber repaid $100,000 to Plaintiff.  However, Schreiber did not pay a fee on the Fourth Loan, nor did Schreiber repay the other loans.

47.     In December of 2016, Schreiber borrowed another $100,000 from Plaintiff (the "Fifth Loan," and together with the First Loan, Second Loan, Third Loan, and Fourth Loan, the "Loans").  Once more Schreiber intentionally crafted the terms of the Fifth Loan to be usurious.

48.     Once more, Schreiber purported to collateralize the Fifth Loan and modified the previous Loans to be convertible into WeWork stock.

49.     In August 2017, Schreiber unbeknownst to Plaintiff sold $44.6 million worth of WeWork stock, but despite his promises, did not provide Plaintiff any of the proceeds.

50.     In December 2018, Defendant emailed Plaintiff with a financial statement falsely attesting to a minimum net worth of $100 million – in a continued attempt to assure Plaintiff of Schreiber's creditworthiness and ability to pay on the previous transactions.

51.     Upon information and belief, Schreiber sold additional WeWork stock in 2019 and 2021 and did not provide Plaintiff any of the proceeds.

52.     In 2019, Schreiber did not disclose any of his prior sales and instead provided additional documentation confirming his pledge of WeWork stock, accounting spreadsheets and promises to fund "in cash or stock" in order to continue to delay Plaintiff's attempts to collect the obligations.

53.     In September 2019, Schreiber secretly pledged the entirety of his WeWork holdings to Goldman Sachs to borrow tens of millions of dollars from Goldman Sachs.

54.     Instead of clearing his debt to Plaintiff, Schreiber made a paltry set of payments to entice Plaintiff into delaying litigation.

55.     In September of 2019, Schreiber made partial repayments to Plaintiff in the amounts of $100,000, $25,000, and $20,000, but did not satisfy the principal of the Loans, much less the promised interest and upside participation.

56.     Defendant currently owes in excess of $2.5 million to Plaintiff.

57.     Since Schreiber has failed to repay the Loans, Plaintiff has demanded that Schreiber turn over the collateral: the stock in WeWork.  Plaintiff made said demands repeatedly up to about September of 2019.

58.     Schreiber refused to turn over the WeWork stock collateral despite verbal promises and texts promising to do so.

59.     Plaintiff has learned since that time that Schreiber used his stake in WeWork to collateralize many other loans, thus double or triple pledging the stock.

60.     When Plaintiff attempted to enforce the Loans in Kuriyan v. Schreiber _et al._, Index No. 655936/2019 (N.Y. Sup. Ct.) (the "NY Action") defendants there, including Schreiber, successfully moved to dismiss that action.

61.     Schreiber's motion to dismiss the NY Action, made on June 23, 2020, relied on the argument that each of the Loans – the usurious terms of which Schreiber himself proposed, crafted and drafted - were usurious and therefore unenforceable.

62.     Thus, the court's decision in the NY Action to dismiss that case and to prevent Plaintiff from recovering the monies loaned with Schreiber, constituted the final damage resulting from Schreiber's schemes.

63.     Prior to the filing of that motion to dismiss and the subsequent dismissal of the NY Action, the instant cause of action was not ripe.

64.     The motion to dismiss the NY Action was the final act of Schreiber's many schemes; Schreiber used the court system to unveil his overriding plan to prevent Plaintiff's recovery of the money he had loaned Schreiber based on the very usurious terms Schreiber himself had proposed.

65.     Until Schreiber filed his motion to dismiss the NY Action Schreiber made certain payments on the Loans, and did not in any way communicate his intention to use the terms as a weapon.

66.     Prior to Schreiber's motion to dismiss the New York Action, Plaintiff was unaware that the terms of the Loans could be interpreted as usurious, or could be unenforceable as a result, or that Schreiber would use the usurious terms he proposed as a mechanism to avoid repaying the amounts owed to Plaintiff and others.

67.     Prior to Schreiber's motion to dismiss the New York Action, Plaintiff relied on Schreiber's superior knowledge and expertise in lending, real estate and private investments.

68.     Plaintiff also relied upon Shreiber's friendship and relationship of trust.

69.     Schreiber also lured Plaintiff into continuing the relationship by promising that Plaintiff could and would be involved in a family office joint venture managing Schreiber's astounding wealth. Schreiber verbally agreed to the family office venture in 2016, signed written

documentation in 2017, set up LLCs and bank accounts in 2018 and instructed plaintiff to source investment opportunities for Schreiber.

70.     As stated above, Schreiber, acting both on his own behalf and that of Waterbridge, intentionally set the terms of each of the Loans to be usurious.

71.     He did so knowing that the courts would not enforce the terms of the Loans.

72.     He did so with the intent, at the time he induced each of the Loans, of not repaying all of the Loans.

73.     Defendant has made a pattern and practice of inducing unwitting parties to loan him money at usurious rates, knowing that Defendant would not be required to repay such money because the courts would not enforce such loans.

74.     Defendant has made a pattern and practice of pledging the same or partial interests in the same collateral – including without limitation Schreiber's stock in WeWork – to secure multiple loans simultaneously from multiple parties, including the Loans to Plaintiff.

75.     Defendant has made a pattern and practice of delaying legal action by making additional concessions, partial payments, and inducements of greater profits to delay legal action.

76.     Defendant's tactic is to repeatedly delay legal action in an attempt to have the relevant statutes of limitations expire.

**Scheme Three: Defendant Provided False Balance Sheets to Plaintiff Claiming Astounding Wealth**

77.     Schreiber provided representations and signed documentation to Plaintiff (and other non-parties) during the time period of the loans/investments claiming astounding wealth, neglecting to show that some of his purported assets were fractional ownership, economically

worthless, secreted or pledged to others.  See above, para. 50, Defendant providing Plaintiff with a false financial statement attesting to a minimum net worth of $100 million.

78.     Shreiber's false representations were meant to deceive Plaintiff (and others) into participating further in Shcreiber's schemes.

**Scheme Four: Schreiber Lied that Loan or Investment Proceeds would be Used to Improve Properties**

79.     As alleged below at paragraphs 84 and 96, Schreiber also pledged that the proceeds of loans and/or investments, including those by Plaintiff ,would be used to acquire and improve property to serve as collateral. Instead, he converted and secreted the funds for personal use.

**Scheme Five: Schreiber Structured His Transactions With Plaintiff (and Others) To Willfully Abuse NY State Usury Laws**

80.     Schreiber's actions, as described above, also willfully took advantage of New York's usury laws regarding loans.   Schreiber intentionally structured his transactions with Plaintiff, Forefront Income Trust, Port Royal North Carolina Mutual, North Carolina Mutual, Brad Reifler and Live Primary with usurious elements to retain the option of invoking a usury defense.

81.     The original loan structure was not usurious.  However, Defendant artfully inserted fees at initiation, late fees and high default rates that allowed him to later raise a usury defense.  This was intentional.

82.     The clever structure of Defendant's loans and fees successfully duped the sophisticated lawyers and staff at North Carolina Mutual, Port Royal North Carolina Mutual, and Forefront entities, as well as the unsophisticated Plaintiff, and Live Primary management.

**OTHER VICTIMS AND THE REGULAR WAY DEFENDANT DID BUSINESS**

**A.      Secreting Funds for Personal Use**

83.      Defendant has primarily used emails and other interstate wires conducted through the internet to induce and facilitate such loans to third parties and the Loans to Plaintiff and other victims.

84.      These third parties include but are not limited to Port Royal North Carolina Mutual Reassurance Trust, North Carolina Mutual Insurance Company, Forefront Income Trust, Forefront Partners, Live Primary, Salhit Shtrozberg, Bradley Reifler, Goldman Sachs Bank, Starwood, and Ariel Tiger.  For example, regarding Forefront Partners, on December 2, 2015, Forefront Income Trust loaned $500,000 to WB West 25th Street Member LLC, an affiliate of Waterbridge and entity controlled by Defendant Schreiber that bought the real property at 119 W. 25 Street, N.Y.  Instead of using these funds to acquire property and do improvements to it, he secreted the funds for personal use and no money was invested into the property, violating the terms of the loan.  The property was sold in December 2016 but Schreiber continued to make partial payments to Forefront hiding the fact that he had already sold the collateral and thus the loan, in violation of the agreement, was uncollateralized.

85.      On the very same day, June 10, 2016, Schreiber pledged the property 801 S Broadway to JPPF Funding Holdco I. LP (a Jamestown associated fund) for $164 million, and he signed a document attesting to no other loans wherein the truth was that Schreiber had negotiated a payment plan (which he defaulted on) for over five million dollars to Port Royal North Carolina Mutual Reassurance Trust, which such loan had additional pledges that would guarantee the loan.

86.     Live Primary is a non-party upon which Schreiber also perpetrated his scheme. According to an email dated June 19, 2018, Schreiber offered and Live Primary agreed to an unenforceable deal involving a "$20k fee for a $485k loan with 30 days terms."  This email was referenced in the United States District Court for the Southern District of New York decision in In re Live Primary, LLC, Case No. 20-11612 (MG), dated March 2, 2021.

87.     North Carolina Mutual Life Insurance Company is a company with which Schreiber did business.  As part of that business, in or about August of 2016 Schreiber pledged property at 700 Atlantic Ave., Brooklyn, New York.  As with other deals, Schreiber later secretly sold the property and secreted the proceeds.

88.     In September of 2019, Schreiber pledged his stock in WeWork to non-party Goldman Sachs in exchange for a $20 million loan, knowing full well that that same stock was already pledged to Plaintiff.  Schreiber also falsely pledged worthless additional collateral to Goldman Sachs, and also partially sold the WeWork collateral that was pledged to Goldman Sachs.  On May 16, 2023, the New York State Supreme Court, New York County, granted summary judgment against Schreiber and other defendants for impermissibly selling the collateral.

**Perjury**

89.     On or about January 27, 2020, Schreiber also committed perjury before a grand jury investigating the principal of the Forefront entities, Bradley Reifler.  Schreiber falsely testified that Reifler made up loan documents and fake loans to satisfy the North Carolina Insurance Commission into thinking the investments were eligible under insurance guidelines while minimizing his own role.  Schreiber's testimony directly contradicted his previous depositions and written records.  As a result of this perjured testimony, Reifler pled guilty to one

count of wire fraud and has been imprisoned, partly based upon Schreiber's perjurious testimony.

**FIRST CLAIM FOR RELIEF**
**Violation of 18 U.S.C. § 1962(c)**
**(Against Defendant Schreiber)**

90.     Plaintiff repeats and realleges the prior allegations as if set forth in full herein.

91.     Plaintiff is a "person" under 18 U.S.C. §§ 1961(3).

92.     Defendant Schreiber is a "person" under 18 U.S.C. §§ 1961(3) and 1962(c).

93.     Waterbridge (and its affiliated entities), is a legal entity, and thus is an "Enterprise" within the meaning of 18 U.S.C. §§ 1961(4) and 1962(c), which Enterprise was engaged in interstate commerce at all times relevant to this complaint.

94.     Schreiber was associated with the Waterbridge enterprise and conducted and participated in the affairs of the Enterprise through a pattern of racketeering, all in violation of 18 U.S.C. § 1962c.

95.     Schreiber, the defendant, is an individual and legally distinct from Waterbridge and its affiliates, which are legal entities. Schreiber participates in the operation and management of Waterbridge, including the conduct of its unlawful affairs within the meaning of 18 U.S.C. § 1961(1)(B), 1341, and 1343.

96.     To wit, Schreiber committed frauds within the meaning of 18 U.S.C. § 1343 by using the wires (e-mail) to falsely represent that loans would be converted into investments; providing documents which indicated that Plaintiff would believe he was a limited partner; falsely asserting that the loans/investments were unenforceable because they were usurious loans.  Schreiber also repeatedly used the wires to secure the Loans with collateral, including but not limited to the stock of WeWork, which collateral had already been pledged to other parties,

and had secretly pledged collateral which he had no ownership interest in. Defendant also provided false balance sheets to Plaintiff claiming astounding wealth; and Defendant lied that loan proceeds will be used to improve properties when in fact the proceeds are secreted and used by Defendant for his personal use, all in violation of 18 U.S.C. § 1343.

97.    Schreiber committed fraud by wire, radio, or television within the meaning of 18 U.S.C. § 1343 by communicating and furthering the frauds referenced in the preceding paragraph by use of emails and the internet.

98.    Some members of the Enterprise, including but not limited to Schreiber, acted with culpability in their scheme.  Other members of the Enterprise, potentially including other officers, directors, and employees of Waterbridge, may or may not have been aware of the Enterprise's fraudulent schemes.

99.    At all times relevant to this complaint, as previously alleged herein and continuing up to the date of this complaint, the Enterprise defrauded both Plaintiff and other third parties by making false statements by means of electronic and postal mailings.

100.    Defendant Schreiber had no intention of ever repaying the Loans or properly pledging the collateral, or fulfilling their obligations to turn over the collateral upon the failure to repay the loans.

101.    The Defendant acted at all relevant times corruptly, with malice, intent, and knowledge, and in reckless disregard of Plaintiff's rights.

102.    Defendant agreed to the operation of the conspiracies to defraud, cheat, steal, and convert the property of Plaintiff and other third parties.

**Racketeering Acts**

103.    The following e-mails, which are interstate wirings, were in furtherance of the

fraud connected to the loans made by Plaintiff to Defendant, all of which were crafted by defendant to be usurious and unenforceable, and which collateral was also pledged to other borrowers:

a.  An email dated June 27, 2013 from Nanci Hom of Waterbridge to Plaintiff with wire instructions for the "investment"/(First Loan).

b.  An email dated March 30, 2015 from Nanci Hom of Waterbridge to Plaintiff with wire instructions regarding a $100,000 "investment"/loan (part of the Second Ooan).

c.  An email dated April 21, 2015 from Nanci Hom of Waterbridge to Plaintiff with wire instructions regarding a $250,000 loan (part of the Second loan).

d.  Emails dated April 21, 2016 from Nanci Hom of Waterbridge to Plaintiff entitled "Investments with Joel Schreiber including new bridge loan" providing documentation on the investments and loans.

e.  An email dated June 10, 2016 from Nanci Hom of Waterbridge to Plaintiff regarding the Fourth loan.

f.  An email dated June 10, 2016 from Schreiber to Plaintiff regarding the Fourth Loan.

g.  An email dated June 29, 2016 from Lisa Izkiayayeva of Waterbridge to Plaintiff regarding the Fourth loan

h.  An email dated April 6, 2017 from Schreiber to Plaintiff regarding capital gains purportedly to repay the loans at issue.

i.  An email dated April 18, 2016 Schreiber to Plaintiff regarding the purported plan to involve Plaintiff in managing Defendants' astounding wealth.

j.  An email dated October 24, 2018, with subsequent follow up emails, from Charles Valentino of Waterbridge to Plaintiff, denying profits from a real estate investment as a basis for failing to repay the first loan/investment.

k.  An email dated August 23, 2019 from Avi Rosen of Waterbridge to Plaintiff regarding the outstanding loans at issue.

l.  Numerous other emails between Schreiber and/or Waterbridge and Plaintiff in furtherance of the execution of the loans at issue.

**Pattern of Racketeering**

104.  The Enterprise was and is continuous, and its regular way of doing business is to induce third parties to make loans to Schreiber at usurious rates, in the knowledge that the Enterprise's principal, Schreiber, cannot be compelled to repay the loans because of the provisions of New York law.  The further regular way of the Enterprise doing business is to fraudulently offer collateral to secure both past and future loans, including but not limited to the WeWork stock, as a way of fending off collection efforts by lenders, including but not limited to Plaintiff.

105.  The predicate acts are both related and continuous since 2010, at least.  The acts are connected to one another as part of a scheme to accomplish a uniform purpose of defrauding lenders, including but not limited to Plaintiff.  The repeated nature of this scheme and the threat of similar conduct occurring in the future makes the acts continuous.

106.  Moreover, the conduct of Defendant Schreiber, *i.e.*, the commission of wire fraud predicates is the regular way of conducting Defendant's ongoing legitimate business as Defendant not only set terms of loans with unenforceable terms of which he defaulted, but he also, against Plaintiff and others, pledged the same collateral for loans to multiple parties,

secreted borrowed funds for personal use as opposed to using funds to repay the loans, and committed illegal acts of perjury and other obstruction of justice to implicate lenders, see Reifler perjury above.

**Injury**

107.   Plaintiff suffered injury to his business and property within the meaning of 18 U.S.C. § 1964(c) by reason of the violation of the statutes set forth above as committed by Defendants.

**Statute of Limitations**

108.   Plaintiff did not have actual knowledge, nor could he have had knowledge of the monetary injury inflicted upon him by the Defendant's illegal acts until sometime after September 2019, which date is within four years the date of the filing of this initial Complaint on March 21, 2023.  This is because as late as September 2019, Schreiber was continuing to make payments to Plaintiff thereby causing Plaintiff to believe that Defendant was in the process of satisfying the debt.  See para. 51.  See also para. 52 (Schreiber made a paltry set of payments to entice Plaintiff into delaying litigation).  Plaintiff was in no position to realize that he had incurred monetary injury until after September 2019 because defendant Schreiber, who had established a personal relationship with Plaintiff, had continued to (1) induce the making of loans at unenforceable interest rates; (2) hide the fact that Schreiber had pledged collateral to multiple parties and (3) had secretly pledged collateral which he had no ownership interest in.   Moreover, there is equitable tolling because of the fraudulent conduct of Schreiber withholding information from Plaintiff, Plaintiff, in the exercise of due diligence could not have had knowledge of the injury until September 2019 at the earliest. Many of the facts demonstrating the schemes are still coming out into the public record, some as recently as July 2023.  Further, Schreiber only

revealed the full extent of his scheme to take advantage of the New York usury laws when he filed his motion to dismiss the case before the New York Supreme Court in 2021; prior to filing this motion to dismiss and the subsequent dismissal of the NY action, the instant cause of action was not ripe.

## SECOND CLAIM FOR RELIEF -  RICO Conspiracy

### (Defendant Schreiber)

109.    Plaintiff repeats and realleges the prior allegations as if set forth in full herein.

110.    Defendant Schreiber conspired with others to engage in the various activities set forth herein, all in violation of the statutes set forth herein, and in violation of 18 U.S.C. § 1962(d).

111.    Schreiber intended to defraud Plaintiff, and others, with knowledge that his conduct would satisfy all of the elements of the substantive criminal offense of RICO, and Schreiber intended to and agreed to adopt the goal of furthering or facilitating the criminal endeavor.

## DEMAND FOR JURY TRIAL

112.    Plaintiff demands a trial by jury on any and all issues triable by right.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment as follows:

a.  Actual damages incurred by Plaintiff owing to the wrongful acts and omissions of Defendants herein; and

b.  Treble damages, in addition to the cost of investigating and prosecuting this suit, and reasonable attorneys' fees and costs pursuant to 18 U.S.C. § 1964(c); and

c.  Equitable relief in the form of assignment of the WeWork stock to Plaintiff in an amount that the Court determines to be appropriate;

d.  Reasonable attorneys' fees and costs;

e.  Pre-judgment and post-judgment interest on damages incurred; and

f.  Any other and further relief as this court deems just and proper to prevent and restrain further violation of 18 U.S.C. § 1962, and to end the ongoing wrongful conduct of Defendants.

Dated: August 17, 2023

BOWLES & JOHNSON PLLC

_____
David K. Bowles
14 Wall Street, 20th Floor
New York, New York 10005
T: (212) 390-8842
F: (866) 844-8305
E: David@BoJo.Law