**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

VIKRAM KURIYAN,

                          Plaintiff,

        -against-

JOEL SCHREIBER and WATERBRIDGE CAPITAL,
LLC

                Defendants.

**Case No. 23-cv-2381 (JLR)**

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANTS'
MOTION TO DISMISS**

MOSES & SINGER LLP
The Chrysler Building
405 Lexington Avenue
New York, New York 10174
Tel. (212) 685-6400
Fax (212) 554-7700

*Attorneys for Defendants*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES................................................................................................i

ARGUMENT ...............................................................................................................1

I.       Res Judicata Bars This Action................................................................1

II.      The Rooker-Feldman Doctrine Bars This Action ...................................6

III.     Plaintiff's RICO Claims Are Time Barred..............................................8

IV.      Plaintiff Fails to Allege a RICO Enterprise...........................................10

CONCLUSION ...........................................................................................................11

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Am. Med. Ass'n v. United Healthcare Corp.*,
  No. 00CIV2800LMM, 2006 WL 3833440 (S.D.N.Y. Dec. 29, 2006).......................................5

*Bin Saud v. Bank of New York*,
  734 F. Supp. 628 (S.D.N.Y. 1990) ....................................................................................4, 5

*Cargo On Demand, Inc. v. Polar Air Cargo Worldwide, Inc.*,
  No. 22-CV-10243, 2023 WL 4472167 (S.D.N.Y. July 11, 2023)..........................................10

*Conopco, Inc. v. Roll Int'l*,
  231 F.3d 82 (2d Cir. 2000) .....................................................................................................5

*Frankel v. Cole*,
  313 F. App'x 418 (2d Cir. 2009)............................................................................................9

*Greenberg v. Bd. of Governors of Fed. Rsrv. Sys.*,
  968 F.2d 164 (2d Cir. 1992) ...................................................................................................5

*Gross v. Waywell*,
  628 F.Supp.2d 475 (S.D.N.Y.2009) .......................................................................................3

*Harris v. New York State Dep't of Health*,
  202 F. Supp. 2d 143 (S.D.N.Y. 2002) ....................................................................................6

*Ho Myung Moolson Co., Ltd. v. Manitou Mineral Water, Inc.*,
  665 F.Supp.2d 239 (S.D.N.Y.2009) .......................................................................................3

*In re Hunter*,
  827 N.E.2d 269 (N.Y. 2005) ..........................................................................................1, 3, 6

*In re Live Primary, LLC*,
  626 B.R. 171 (Bankr. S.D.N.Y. 2021) ...................................................................................3

*Kuriyan v. Schreiber*,
  175 N.Y.S.3d 504 (App. Div. 1st Dep't 2022)....................................................................3, 8

*Kuriyan v. Schreiber*,
  Index No. 655936/2019, 2021 WL 2651109 (Sup. Ct. N.Y. Cnty. June 25, 2021) ...............4, 9

*Kuriyan v. Schreiber*,
  No. 655936/2019, 2021 WL 4198093 (Sup. Ct. N.Y. Cnty. Sep. 13, 2021).............................2

*M&E 73-75, LLC v. 57 Fusion LLC*,
  128 N.Y.S.3d 200 (App. Div. 1st Dep't 2020).........................................................................3

*O'Brien v. City of Syracuse*,
  429 N.E.2d 1158 (N.Y. 1981) ................................................................................................1

*Padilla v. City of New York*,
  No. 04 CIV. 0257, 2004 WL 2725047 (S.D.N.Y. Nov. 24, 2004)...........................................6

*S.E.C. v. First Jersey Sec., Inc.*,
  101 F.3d 1450 (2d Cir. 1996) .................................................................................................5

*Simpson v. Putnam County National Bank of Carmel*,
  20 F.Supp.2d 630 (S.D.N.Y.1998) .......................................................................................10

*Sykes v. Mel Harris & Assocs., LLC*,
  757 F. Supp. 2d 413 (S.D.N.Y. 2010) .................................................................................7, 8

i

*Sykes v. Mel S. Harris & Assocs. LLC*,
    780 F.3d 70 (2d Cir. 2015) ...................................................................................7
*Town of Poughkeepsie v. Espie*,
    402 F. Supp. 2d 443 (S.D.N.Y. 2005) ...................................................................9
*Won v. Amazon.com, Inc.*,
    2022 WL 3576738 (E.D.N.Y. Aug. 19, 2022) .......................................................6

**Rules**

Fed. R. Civ. P. 9(b) ...................................................................................................4
Fed. R. Civ. P. 12(b)(1) and (6) ................................................................................1

Defendants, Joel Schreiber ("Schreiber") and Waterbridge Capital LLC ("Waterbridge") (collectively, "Defendants"), by their counsel, respectfully submit this reply memorandum of law in support of their motion pursuant to Fed. R. Civ. P. 12(b)(1) and (6) to dismiss Plaintiff Vikram Kuriyan's ("Plaintiff") First Amended Complaint ("FAC").

## ARGUMENT

### I.    Res Judicata Bars This Action

Plaintiff does not dispute that every aspect of his RICO claims arises from the exact same Alleged Loans that were already litigated in the Prior Action. Def. Mem. 11–13. *In re Hunter*, 827 N.E.2d 269, 274 (N.Y. 2005). Plaintiff also does not dispute that he now seeks in federal court the same relief that he was already denied in state court. Def. Mem. 13–14. *O'Brien v. City of Syracuse*, 429 N.E.2d 1158, 1160 (N.Y. 1981). Plaintiff similarly does not dispute that the state court had jurisdiction to hear any potential RICO claim in the Prior Action. Instead, Plaintiff resorts to two unavailing tactics.

*First*, Plaintiff mischaracterizes Defendants' arguments. Plaintiff incorrectly asserts that, "Defendant's essential argument is that the predicate fraud claims at the heart of the RICO cause of action have previously been litigated, but this is patently untrue." Pl. Mem. 7. This is a strawman. Defendants do not argue that res judicata bars this action because he actually asserted and litigated his RICO predicate claims in the Prior Action. Indeed, that is not even the correct analysis under New York's transactional approach to res judicata. *In re Hunter*, 827 N.E.2d at 274. Rather, res judicata bars this action because it and the Prior Action arise out of the same exact same series of transactions—the Alleged Loans—and Plaintiff **never** asserted a RICO claim in the

1

Prior Action, despite the fact that he could have done so.[1]  Consequently, New York's well-settled transactional approach to res judicata bars Plaintiff from asserting  any other claims arising out of the Alleged Loans, including Plaintiff's RICO claims.[2]  *Id*.

*Second*, Plaintiff makes the demonstrably incorrect claim that the FAC contains allegations that "were not made and could not have been made in the [Prior Action]:  the allegations of a scheme that Defendant intended to and did take advantage of New York usury law . . . to borrow money on unenforceable terms, refuse to pay, and fall back on the usury defense in the New York courts when the creditors came to collect. . . . [and the claim that] Plaintiff was unaware that the terms of the Loans could be interpreted as usurious."  Pl. Mem. 8.

> In reality, Plaintiff explicitly made these very same allegations in the Prior Action.  To wit:
>
> > Mr. Schreiber has, in fact, engaged in a pattern and practice of defrauding lenders and investors by employing the strategy of offering to take loans under terms that would otherwise be unenforceable as a tactic to avoid paying his debts and the interest associated therewith.  Mr. Schreiber, who contends that my efforts to recover the money lent is tantamount to enforcing usurious loans, is in fact attempting to use the usury laws as both a shield and a sword, where he seeks to not only avoid re-paying the promised return on the moneys provided to him, but he goes even further by attempting to avoid re-paying the principal.

Shapiro Decl. Ex. "C" ¶¶ 8–9.[3]  Plaintiff also alleged that he "is one of multiple individual and institutional lenders who were subjected to Schreiber's fraudulent borrowing and investment scheme."  Shapiro Decl. Ex. "B" ¶ 51.  Plaintiff further argued in the Prior Action that,

---

[1] To be sure, Plaintiff did assert several common-law fraud claims in the Prior Action.  Plaintiff—who argues (incorrectly) that dismissal of the state fraud claims was not on the merits—appears to conflate common-law fraud with statutory mail and wire fraud.  Either way, Plaintiff could have asserted his RICO claims in the Prior Action.

[2] Plaintiff is also precluded from attempting to revive issues that he already raised and lost upon in the Prior Action—*e.g.*, Plaintiff's allegations here that Schreiber proposed the Alleged Loans, that Plaintiff "relied on Schreiber's superior knowledge and expertise in lending, real estate and private investments" and that Plaintiff was "unaware that the terms of the Loans could be interpreted as usurious."  FAC ¶¶ 66–67.

[3] As is routine in New York State Court, the court in the Prior Action considered as part of the pleadings Plaintiff's allegations made in his affirmation in opposition to Defendants' motion to dismiss.  *See Kuriyan v. Schreiber*, No.

> Schreiber executed this grossly fraudulent scheme of borrowing money from Plaintiff-Respondent through short-term bridge loan transactions with initiation fee terms that he intended to default upon and then entirely avoid by invoking a usury defense. . . . It bears noting that investigation has shown that Schreiber employs a similar pattern and practice with Schreiber engaging in similar short term lending transactions with other parties.

Shapiro Decl. Ex. "H" at 30–31. Plaintiff even unsuccessfully argued in the Prior Action, that "Plaintiff did not know he was entering into usurious loans." *Id*. at 20.

Clearly, Plaintiff asserted in the Prior Action the same allegations that he now characterizes as key to his RICO claims, and which he now incredibly claims were "never so much as mentioned in the State Court litigation, and could not have been." Pl. Mem. 9. Yet, despite making these allegations, and despite claiming that he had "[done] much independent research regarding Mr. Schreiber" in bringing the Prior Action (Shapiro Decl. Ex. "C" ¶ 7), Plaintiff never asserted any RICO claim. He is thus barred from doing so now. *In re Hunter*, 827 N.E.2d at 274.

Plaintiff's claim that "the FAC contains allegations of similar [non-party] victims that Plaintiff simply had no information about during the State Case" (Pl. Mem. 9) is likewise belied by Plaintiff's allegations in the Prior Action.[4] There, Plaintiff alleged that, after "conduct[ing]

---

655936/2019, 2021 WL 4198093, at *4 (Sup. Ct. N.Y. Cnty. Sep. 13, 2021) ("accepting the allegations of the complaint as true and as amplified by the statements in plaintiff's affidavit"); *Kuriyan v. Schreiber*, 175 N.Y.S.3d 504, 505 (App. Div. 1st Dep't 2022). *See generally M&E 73-75, LLC v. 57 Fusion LLC*, 128 N.Y.S.3d 200, 204 (App. Div. 1st Dep't 2020) ("opposing affidavits" to motions to dismiss are "considered to amplify the pleadings").

[4] To the extent that Plaintiff alleges non-party victims in an attempt establish a pattern of racketeering or the continuity of a scheme, even if those allegations are true (they are not), Plaintiff still fails to state a RICO claim. The FAC is bereft of a single nonconclusory allegation of a similar purported scheme to abuse New York's usury laws with respect to any alleged non-party victims. Indeed, at least one of those "victims," Live Primary (FAC ¶ 86), was not even Schreiber's lender. Quite the opposite—Live Primary was the *debtor* to an entity in which Schreiber was involved. *See generally In re Live Primary, LLC*, 626 B.R. 171, 178 (Bankr. S.D.N.Y. 2021). At best, Plaintiff merely alleges potential garden-variety fraud and breaches of unrelated contracts with these non-parties for Schreiber's alleged sole benefit. *See Gross v. Waywell*, 628 F.Supp.2d 475, 494–96 (S.D.N.Y.2009) (finding no closed-ended continuity even though scheme lasted for more than four years and plaintiffs alleged more than 100 instances of mail and wire fraud because scheme had a single goal to the benefit of a limited number of defendants); *Ho Myung Moolson Co., Ltd. v. Manitou Mineral Water, Inc.*, 665 F.Supp.2d 239, 261 (S.D.N.Y.2009) ("Courts have repeatedly held that a simple fraud scheme is insufficient to state a RICO violation.").

3

much independent research," he had "also come to learn that Mr. Schreiber has employed these similar tactics with respect to a host of other lenders and investors."  Shapiro Decl. Ex. "C" ¶¶ 7, 18–26.  Plaintiff then proceeded to allege a list of purported nonparty victims and transactions, many of the same ones that he regurgitates here.[5]  *Id*.; Def. Mem. 6, 8–9.  *E.g.*, *compare* FAC ¶¶ 44, 84 *with, Kuriyan v. Schreiber*, Index No. 655936/2019, 2021 WL 2651109, at *1 (Sup. Ct. N.Y. Cnty. June 25, 2021); *compare*  FAC ¶¶ 66, 84 *with* Shapiro Decl. Ex. "C" ¶ 22; *compare* FAC ¶ 84 *with* Shapiro Decl. Ex. "C" ¶ 25.  Likewise, Plaintiff's claim that information about Bradley Reifler or Forefront (FAC ¶¶ 80, 84), Reifler's entity, "was not available" to him is belied by the fact that Reifler, Plaintiff's friend and business associate, submitted affidavits supporting Plaintiff in the Prior Action.[6]  Shapiro Reply Decl. Exs. "A"–"B."  Moreover, Plaintiff was Forefront Income Trust's Independent Trustee and Chair of its Audit Committee.  *Id*. Ex. "C."

In claiming that he did not have knowledge of the facts underlying his RICO claims during the Prior Action, Plaintiff misguidedly relies on *Bin Saud v. Bank of New York* (Pl. Mem. 8) for the proposition that "res judicata may well be inappropriate where the facts underlying the later claim were not present in the prior action . . . were fraudulently concealed or could not have been discovered through the exercise of due diligence."  *Bin Saud v. Bank of New York*, 734 F. Supp. 628, 634 (S.D.N.Y. 1990).  But, as discussed above, that is far from the case here.  Just as the *Bin Saud* court noted later in that same paragraph to which Plaintiff cites, "the record in the [Prior] Action . . . belies [Plaintiff's] claimed lack of knowledge. . . .  it is apparent that [Plaintiff] had

---

[5] Here, Plaintiff alleges the existence of many of the alleged "victims" only in conclusory fashion, which fails to satisfy Fed. R. Civ. P. 9(b) and state a RICO claim.

[6] Notably, Reifler was recently sentenced to a five-year federal prison term for defrauding North Carolina Mutual, one of the "victims" that Plaintiff alleges here.  https://www.justice.gov/opa/pr/former-investment-manager-sentenced-multimillion-dollar-scheme-defraud-life-insurance-company;

4

notice of the essential facts upon which the current RICO claim is based during the pendency of the prior lawsuit." *Id*.

Having failed to assert a RICO claim during the Prior Action, res judicata precludes Plaintiff from a second bite at the apple in this Court. None of Plaintiff's cases compels a different result. Indeed, each of Plaintiff's cases is either simply inapposite or compels dismissal.

*First*, Plaintiff relies upon cases that apply **federal** preclusion law to prior actions that were brought before federal court or administrative agencies. *E.g.*, *S.E.C. v. First Jersey Sec., Inc.*, 101 F.3d 1450, 1464 (2d Cir. 1996); *Greenberg v. Bd. of Governors of Fed. Rsrv. Sys.*, 968 F.2d 164, 168 (2d Cir. 1992). But it is well-settled that, where, as here, the Prior Action was brought in New York State court, New York's preclusion law applies. *Conopco, Inc. v. Roll Int'l*, 231 F.3d 82, 87 (2d Cir. 2000).

*Second*, notwithstanding the fact that those cases apply federal preclusion law, they still require dismissal here. Plaintiff's cases involve **new or different transactions and facts** from those involved in the original actions. *First Jersey Sec., Inc.*, 101 F.3d at 1464 (holding that res judicata did not bar claims at issue because "[a]t the time the SEC filed its charges and throughout the period of the [prior] hearing, the transactions at issue here [in the subsequent action] had not yet occurred."); *Am. Med. Ass'n v. United Healthcare Corp.*, No. 00CIV2800LMM, 2006 WL 3833440, at *20 (S.D.N.Y. Dec. 29, 2006) (holding that "the transactions, evidence, and underlying facts differ considerably from those at issue in" the prior litigation). Moreover, as Plaintiff himself cites (Pl. Mem. 7), the court in *Greenberg* held that "preclusion is limited to the transaction at issue in the first action. Litigation over other transactions, though involving the same parties and similar facts and legal issues, is not precluded." *Greenberg*, 968 F.2d at 168. Here, however, Plaintiff admits that his RICO claims arise from the same exact Alleged Loans that were

fully litigated in the Prior Action. Those claims are therefore barred by New York's transactional approach to res judicata. *In re Hunter*, 827 N.E.2d at 274.

Plaintiff's reliance on *Won v. Amazon.com, Inc.*, 2022 WL 3576738, at *12–13 (E.D.N.Y. Aug. 19, 2022) also misses the mark. That case involved an analysis under the claim-splitting doctrine, not res judicata.

## II.    The Rooker-Feldman Doctrine Bars This Action

In essence, Plaintiff argues that this action falls outside the ambit of the *Rooker-Feldman* doctrine because he was canny enough not to verbatim ask this Court to overturn the state court judgment in the Prior Action. Plaintiff pays lip service to how he "accepts the ruling of the State Court," while simultaneously asking this Court to reject it in substance. Pl. Mem. 10. The FAC speaks for itself. Plaintiff explicitly alleges that he was "damage[d]" by "the court's decision in the NY Action to dismiss that case." FAC ¶ 62. Moreover, Plaintiff does not dispute that seeks the same relief he was denied in the Prior Action, which impermissibly "goes to the crux of the state court's judgment." *Harris v. New York State Dep't of Health*, 202 F. Supp. 2d 143, 165 (S.D.N.Y. 2002). "Reduced to its core, therefore, in this action [Plaintiff] 'in essence' asks this Court to reverse" the Prior Action. *Id.* Plaintiff's claims here "would require the Court to perform a direct appellate review function of examining the state court's ruling, finding that its judgment . . . was wrong, and granting [Plaintiff] essentially the same relief he failed to obtain before the Appellate Division . . . . It is precisely this form of stark second-guessing and undue federal intrusion that the Rooker–Feldman doctrine intended to overcome." *Id. See also Padilla v. City of New York*, No. 04 CIV. 0257, 2004 WL 2725047, at *2 (S.D.N.Y. Nov. 24, 2004) ("The Rooker–Feldman doctrine bars this action because Plaintiff either raised or had ample opportunity to raise the claims presented here in the prior state proceedings, in which Plaintiff sought the same relief").

6

Plaintiff misguidedly relies upon a single case, *Sykes v. Mel S. Harris & Assocs. LLC*, 780 F.3d 70, 94–95 (2d Cir. 2015), for the proposition that *Rooker-Feldman* does not bar subsequent RICO actions "if they are based on fraudulent use of the court." *Id*. But Plaintiff fails to allege any "fraudulent use of the court" here and, in any event, *Sykes* is readily distinguishable. The *Sykes* court was presented with a unique set of facts not alleged in this action. There, the Second Circuit found that the federal defendants/state-court plaintiffs obtained state-court default judgments by way of "sewer service," where they "would fail to serve the summons and complaint but still submit proof of service to the court." *Id*. at 76. Then, after the federal plaintiffs/state-court defendants "failed to appear in court for lack of notice of the action," the federal defendants applied for default judgments "by providing the court with . . . an 'affidavit of merit' attesting to their personal knowledge regarding the defendant's [underlying] debt and a[] [bogus] affidavit of service as proof of service." *Id*. In federal court, the plaintiffs/state court defendants brought claims under Fair Debt Collection Practices Act, RICO, and state law alleging that the debt-buying company, debt collection agency, process service company, and others engaged in a scheme to fraudulently obtain default judgments against them and others in state debt collection actions.

Crucially, the District Court found, and the Second Circuit agreed, that the plaintiffs did not seek to overturn the state court default judgments and that their claims were "independent of the state-court judgments" for the specific reasons that: (1) "[i]n fact, all plaintiffs have had the default judgments against them vacated or discontinued"; (2) the fraudulent conduct was the abuse inherent in obtaining default judgments through "sewer service"; and (3) the plaintiffs were not seeking a do-over of relief they were denied. *Id*. at 94; *Sykes v. Mel Harris & Assocs., LLC*, 757 F. Supp. 2d 413, 429 (S.D.N.Y. 2010).

Plaintiff's claims in the FAC differ every respect.  First, unlike the plaintiffs in *Sykes*, Plaintiff seeks the relief he was denied in the Prior Action.   That was not an issue in *Sykes* because the state court judgments had been vacated and the relief the parties sought concerning the procedural abuses of the court system was facially unrelated to the merits of the state court default judgments.   Second, the FAC is simply barren of even a single factual allegation that comes remotely close to alleging that Schreiber defrauded the State Court, as the *Sykes* defendants did. Indeed, unlike in *Sykes*, the Prior Action was fully litigated on the merits, and Plaintiff lost.  Having exhausted every avenue to appeal in state court, Plaintiff is simply looking for a do-over here.

### III.    Plaintiff's RICO Claims Are Time Barred

Plaintiff does not dispute that the only alleged injury for which he seeks redress is Schreiber's failure to repay the Alleged Loans.   Crucially, Plaintiff alleges no injury occurring subsequent to the alleged defaults.   Rather, Plaintiff—a man who "holds a finance-related doctorate from Harvard University and has previously headed a unit at Bank of America that managed over $30 billion in assets," *Kuriyan*, 175 N.Y.S.3d at 505—regurgitates the FAC's allegation that he did not know that he was injured by defaults on the Alleged Loans because Schreiber's alleged post-default partial payments (which Plaintiff alleges did not cure any default) were "leading [Plaintiff] to believe that [he] was in no position to realize that he had incurred monetary penalty" until the date on which Plaintiff actually filed the Verified Complaint in the Prior Action.  Pl. Mem. 13.

This contention—unsupported by any legal authority—stretches credulity, and as discussed in Defendants' moving brief, amounts to no more than the non-starter argument that the statute of limitations should run from when Plaintiff claims to have discovered Schreiber's alleged fraudulent pattern of racketeering activity.   But it is well-settled that the four-year limitations

period is "is triggered when plaintiffs discover or should have discovered their RICO **injury**, not when they discover or should have discovered the underlying pattern of racketeering activity, even if the pattern of racketeering activity includes fraud." [7] *Frankel v. Cole*, 313 F. App'x 418, 419–20 (2d Cir. 2009) (emphasis added).

The notion that Plaintiff, a sophisticated financier, did not know of his alleged injury at the time that Schreiber allegedly defaulted on the Alleged Loans is also contradicted by Plaintiff's own allegations.  For example, Plaintiff alleged in the Prior Action:

> Since the first instance of breach [of the Alleged Loan agreements] and repeatedly following each instance thereafter . . . [Plaintiff] has repeatedly informed Schreiber that Schreiber was in default with [Plaintiff] demanding full repayment of all amounts due and owing or the tender of WeWork Stock on multiple occasions.

Shapiro Decl. Ex. "B" ¶ 90 (emphasis added).  Plaintiff further alleged there, as he does here, that he demanded repayment from Schreiber and threatened him with litigation numerous times—meaning that Plaintiff knew then that he had an injury for which he could seek redress in litigation. FAC ¶¶ 54, 57; Shapiro Decl. Ex. "B" ¶ 89.

For the same reasons, in addition to the reasons discussed in Defendants' moving brief (Def. Mem. 20 at n. 11), Plaintiff's argument that equitable tolling saves his FAC is misguided. Plaintiff also cannot benefit from equitable tolling because his mere conclusory allegation that he "did not discover, and could not have discovered with diligent efforts the RICO violations . . . [does] not constitute a sufficient pleading or showing that due diligence was exercised" *Town of*

---

[7] Plaintiff also tries dodging the statute of limitations by arguing that "Plaintiff did not know, nor could have known . . . of his monetary injury until after September 2019 at which time that [sic] Schreiber used his stake in WeWork to collateralize many other loans."  Pl. Mem. 14.  Leaving aside that this argument is predicated on Plaintiff having already been injured by the alleged defaults, Plaintiff submitted in the Prior Action UCC filings concerning the alleged pledges, which are publicly available, and alleged that he knew about the other loan agreements.  *Kuriyan*, 2021 WL 2651109, at *1.  The argument also contradicts the FAC's allegations that the WeWork Stock was "already pledged to others in its entirety in September 2012, March 2015, December 2015, June 2016, and May 2017.  FAC ¶ 44.

*Poughkeepsie v. Espie*, 402 F. Supp. 2d 443, 452 (S.D.N.Y. 2005); *Simpson v. Putnam County National Bank of Carmel*, 20 F.Supp.2d 630, 635 (S.D.N.Y.1998) ("This Court will not read assertions of diligence into plaintiff's complaint" where it is only conclusorily pleaded).

Plaintiff's appeal to Governor Cuomo's COVID-related emergency executive orders tolling New York's statutes of limitations for 228 days is unavailing. Even if those executive orders could somehow be read to toll the limitations period for a federal RICO action, they still would not save the FAC, as the limitations period would be tolled to no later than August 5, 2021.

The FAC must be dismissed as untimely.

### IV.    Plaintiff Fails to Allege a RICO Enterprise

In response to Defendants' argument that Plaintiff fails to state a RICO enterprise because the FAC fails to allege Waterbridge's involvement, Plaintiff argues that the FAC alleges that "Schreiber founded Waterbridge in 2006 as a *vehicle* for his investment and Schreiber used Waterbridge and affiliated entities as a *vehicle* to concoct a scheme to take advantage of" New York's usury laws. Pl. Mem. 16 (emphasis in original).

This argument is unavailing. This Court routinely holds that merely alleging that a company served as a vehicle or front fails to satisfy the distinctiveness requirement for a RICO enterprise. *E.g. Cargo On Demand, Inc. v. Polar Air Cargo Worldwide, Inc.*, No. 22-CV-10243, 2023 WL 4472167, at *4 (S.D.N.Y. July 11, 2023) ("the Complaint alleges nothing about the companies except that they served as vehicles or fronts . . . . Such allegations fail to meet the distinctness requirement."). For that reason alone, Plaintiff's RICO claims must fail.

10

**CONCLUSION**

For the foregoing reasons, Defendants respectfully request that this Court grant their motion to dismiss the FAC in its entirety, together with prejudice, and without leave to amend, and for such other and further relief as this Court deems just, equitable, and proper.

Dated: January 26, 2024
      New York, New York

                                  Yours, etc.
                                  Respectfully Submitted,

                                  MOSES & SINGER LLP
                                  *Attorneys for Defendants*

                                  _____
                                  By: ELIAD S. SHAPIRO
                                  The Chrysler Building
                                  405 Lexington Avenue
                                  New York, New York 10174
                                  (212) 554-7800
                                  eshapiro@mosessinger.com