# REPLY EX. "B"

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
-----------------------------------------------------------------X

VIKRAM KURIYAN,

                      Plaintiff,

      - against -

JOEL SCHREIBER and WATERBRIDGE
CAPITAL, LLC,

                    Defendants.
-----------------------------------------------------------------X

**AFFIDAVIT OF BRADLEY REIFLER IN SUPPORT OF MOTION TO ATTACH**

Index No.: 655936/2019

      BRADLEY REIFLER duly swears and hereby affirms, under penalty of perjury, as follows:

      1.      I am not a party to this lawsuit, but I am acquainted with both the Plaintiff and Defendant in this matter. I have personal knowledge of all the facts and circumstances set forth herein. This Affidavit is submitted in Support of the Plaintiff's motion to attach Joel Schreiber ("Schreiber")'s ownership interest in We Member/We Work (the "WeWork Stock") and any cash proceeds derived therefrom.

      2.      I first met Joel Schreiber some time in 2009 or 2010 and maintained a personal and professional relationship with him for at least seven years which has regrettably devolved into a litigated dispute with both civil and criminal implications.

      3.      In 2010 Mr. Schreiber was among the initial investors in an entity which I formed, Forefront Capital Management, at the time he helped raise approximately $2,000,000 in capital, including personally contributing $700,000.

      4.      For between six and seven years, Mr. Schreiber sub-leased office space within Forefront's offices, where he had six people working including three private offices and 3 working

cubicles. Mr. Schreiber's businesses were listed both on the exterior of the office entrance and on the elevator directory. Mr. Schreiber's office was down the corridor from me.

5. During the time that Mr. Schreiber and I shared office space we would regularly communicate and collaborate when possible. Mr. Schreiber tried to introduce clients to me for a fee and I tried to introduce opportunities to Mr. Schreiber with the design of us each mutually profiting.

6. Mr. Schreiber introduced me to many of his contacts and business associates and I introduced him to many of my contacts and business associates, again with the design of us each mutually profiting.

7. On a few occasions Mr. Schreiber introduced me to Adam Neumann, the former CEO of WeWork. On one occasion in 2012, I offered to help Mr Schreiber to mediate and help negotiate a dispute between Mr. Schreiber and Mr. Neumann pertaining to Mr. Schreiber's ownership stake in WeWork.

8. Mr. Schreiber also affirmed to me many times that he held ownership interests in unique and highly valuable founders shares of WeWork stock, which I understand to be held through a limited liability company called We Member LLC.

9. I was made aware of Mr. Schreiber's ownership interest in part because he offered it as collateral in connection with certain lending agreements and I became acquainted with We Member LLC through Mr. Schrieber's various collateral pledges.

10. I first met Mr. Kuriyan sometime 2012 and was impressed by Mr. Kuriyan's background and accomplishments. I later invited him to join the Board of Trustees for Forefront Income Trust.

11. Mr. Kuriyan is among the individuals whom I introduced to Joel Schreiber. Over the years there were numerous occasions where Mr. Kuriyan, Mr. Schreiber and I would get together in and out of the office and discuss business opportunities.

12. Both Mr. Schreiber and I operated in businesses capacities that sought deals calling for the use of and access to capital. It was common for us to discuss where capital could be acquired and how it could best be used to generate profits.

13. There were a number of occasions over the years where I personally lent money to Mr. Schreiber. Mr. Schreiber repaid the money borrowed at the agreed upon terms. This led to a comfort that Mr Schreiber was honest, however, his actions proved otherwise.

14. On each of those occasions where I personally and when Mr. Kuriyan and I loaned money to Mr. Schreiber, the loans were generally made through oral "handshake deals" with terms being agreed upon and with minimal and limited documentation. Given the proximity of our offices it was common for me to communicate with Mr. Schreiber about these types of transactions in person or, on occasion, via email. We generally did not memorialize these deals with formal contracts unless there was some demonstrated need to do so.

15. I also understand that Mr. Schreiber has made reference to me in a recent Affidavit filed in this case including exhibiting an indictment against me in a North Carolina Federal Court. I am engaged in litigating where I am defending myself against the untrue charges against me in that North Carolina Federal Court case and have been advised that I need not and should not seek to defend myself in this forum concerning the charges in that indictment, however, I feel compelled to share certain facts concerning that case and Mr. Schreiber's role in causing the indictment to occur in the first instance.

16. The indictment against me stems in large part from a series of loans that were made by Forefront Income Trust and other related entities. Chief among those loans were a series of loans totalling over $15,000,000 made to Mr. Schreiber and/or entities which he controlled or had ownership interests in. Significant portions, if not all of the capital loaned to Mr. Schreiber was procured from an investment relationship which Forefront had developed and involved the lending of capital which derived from an insurance company, North Carolina Mutual Reinsurance Company. In fact, the Defendants in this case, Mr. Schreiber and Waterbridge Capital, LLC are referenced within the indictment and those references therein only merely touch upon the Defendants actual role in the dealings that gave rise to the indictment.

17. It is my belief that I am innocent of the charges against me in the North Carolina Federal Court case and I intend to defend that case to the full extent. I further believe that, but for Mr. Schreiber's failure to honor his financial commitments and repay the money he borrowed from Forefront Income Trust and the related entities, there would not be an indictment pending against me in North Carolina Federal Court.

18. I have also been told that the invocation of my name in this case was made in connection with allegations that fraudulent documents have been exhibited to Mr. Kuriyan's motion, specifically the pledge agreements made by Mr. Schreiber to Forefront Income Trust and North Carolina Mutual.

19. I personally provided those documents attached as Exhibits "D" and "E" to Mr. Kuriyan's motion for attachment. Those documents are genuine and authentic. Mr. Schrieber's allegations of fraud pertaining to those documents is patently untrue and is consistent with his now known to me history of disreputable and dishonest business conduct.

20. As I indicated in my Affidavit of June 8, 2020, I am personally aware that between approximately June 2013 and December of 2016, Joel Schreiber sourced, induced and borrowed money from Vikram Kuriyan borrowing a total of $1,000,000 in principal from Vikram Kuriyan.

21. It is my understanding from dealing with Mr. Schreiber and Mr. Kuriyan and from conversations that I have had with each of these individuals that Mr. Schrieber had pledged his ownership in We Work stock to Mr. Kuriyan as collateral for the various loans which Mr. Kuriyan made. This was consistent with pledges Mr. Schrieber made to me concerning loans from Forefront Income Trust and in connection with loans deriving from capital acquired by North Carolina Mutual Reinsurance Company. Exhibits "D" and "E" to Mr. Kuriyan's motion for attachment are the documents which affirmed these collateral pledges.

22. I am also personally aware of the fact that Mr. Kuriyan, despite years of efforts to recover his money or the collateral that was pledged to him, those loans remain unsatisfied.

23. On at least one occasion since Mr. Kuriyan loaned money to Mr. Schreiber, Mr. Schreiber experienced a significant liquidation event concerning his ownership interest in We Work resulting in Mr. Schreiber receiving tens of millions of dollars, yet he continued to refuse to repay Mr. Kuriyan or to provide him with the benefit of the pledged collateral.

24. Based upon Mr. Schreiber's conduct, if this Court does not prevent Mr. Schreiber from selling his We Work Stock and/or secreting profits derived therefrom, those existing pledges to Mr. Kuriyan of collateral will be rendered worthless.

Dated: April 15, 2021
      New York, New York

By: _____
     Bradley Reifler