UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| VIKRAM KURIYAN,<br><br>                                  Plaintiff,<br><br>           -against-<br><br>JOEL SCHREIBER,<br><br>                                  Defendant. | Case No. 1:23-cv-02381 (JLR)<br><br>**OPINION AND ORDER** |

JENNIFER L. ROCHON, United States District Judge:

Vikram Kuriyan ("Plaintiff") asserts claims against Joel Schreiber ("Defendant") under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq*. ECF No. 38 (the "Amended Complaint" or "Am. Compl.") ¶¶ 90-111. Defendant has moved to dismiss the Amended Complaint under Federal Rule of Civil Procedure ("Rule") 12(b)(1) and Rule 12(b)(6). ECF No. 45 ("Br."). As explained below, the Court denies the motion under Rule 12(b)(1) but grants the motion under Rule 12(b)(6).

## BACKGROUND

The Court accepts the factual allegations in the Amended Complaint as true and draws all reasonable inferences in Plaintiff's favor. *Palmer v. Amazon.com, Inc.*, 51 F.4th 491, 503 (2d Cir. 2022). The Court also takes judicial notice of "document[s] filed in another court to establish the fact of such litigation and related filings." *Rates Tech. Inc. v. Speakeasy, Inc.*, 685 F.3d 163, 166 n.3 (2d Cir. 2012) (ellipsis and citation omitted).

### I. The Five Loans

Defendant is an investor, lender, and real-estate developer. Am. Compl. ¶¶ 11-14. He founded Waterbridge Capital LLC ("Waterbridge") in 2006 as a vehicle for his investments. *Id.* ¶¶ 3, 15. He serves as Waterbridge's chief executive officer. *Id.* ¶ 15.

Plaintiff and Defendant have been business associates since 2011. *Id.* ¶ 22. Plaintiff also once considered Defendant to be his friend. *Id.* ¶ 24. Between June 2013 and December 2016, Plaintiff made five loans (the "Five Loans") to Defendant and/or Waterbridge. *Id.* ¶¶ 29, 37-38, 41, 43, 47. Although Defendant partially repaid some of the Five Loans (and repaid in full a sixth loan by Plaintiff made in March 2015), Defendant did not repay in full any of the Five Loans. *Id.* ¶¶ 32, 36, 39, 42, 46, 54-55.

## II. The Prior Action

On October 10, 2019, Plaintiff sued Defendant and Waterbridge in the Supreme Court of New York, New York County (the "Prior Action"). ECF No. 46-2 (the "State Complaint" or "State Compl."). Plaintiff asserted 10 state-law causes of action: (1) specific performance; (2) permanent injunction to enjoin Defendant from conveying pledged WeWork stock; (3) creating a constructive trust to hold WeWork stock; (4) equitable lien on WeWork stock; (5) breach of contract; (6) fraud in the inducement; (7) fraud (pleaded in the alternative to the breach-of-contract claim); (8) unjust enrichment (pleaded in the alternative to the breach-of-contract claim); (9) *quantum meruit*; and (10) breach of fiduciary duty. *Id.* ¶¶ 96-167. Plaintiff did not assert any RICO claims. *See generally id.*

On February 21, 2020, Defendant and Waterbridge moved to dismiss the Prior Action. Memorandum of Law in Support of Defendants' Motion to Dismiss, *Kuriyan v. Schreiber*, No. 655936/2019 (N.Y. Sup. Ct. filed Feb. 21, 2020; corrected version filed June 23, 2020), Dkt. 11, https://iapps.courts.state.ny.us/nyscef/ViewDocument?docIndex= 1lYKPkJrlyYzCmkSFa8xKQ== [https://perma.cc/WCL7-FE9H]. They argued that each of the Five Loans was usurious and therefore unenforceable. *Id.* at 6-11. They also argued that Plaintiff's claims failed on other grounds. *Id.* at 11-22.

In opposition to the motion to dismiss, Plaintiff submitted (among other things) an affidavit "to supplement those allegations contained within the [State] Complaint." ECF No. 46-3 (the "Affidavit" or "Aff.") ¶ 1. Plaintiff explained that "[g]iven the downturn in [their] relationship," Plaintiff had "conduct[ed] much independent research regarding" Defendant and had "come to learn that [Defendant's] track record of business dealings is far from upstanding. [Defendant] has a long history of deceit, lies[,] and financial misconduct." *Id.* ¶ 7. Plaintiff asserted that Defendant had "engaged in a pattern and practice of defrauding lenders and investors by employing the strategy of offering to take loans under terms that would otherwise be unenforceable as a tactic to avoid paying his debts and the interest associated therewith." *Id.* ¶ 8. According to Plaintiff, Defendant was "attempting to use the usury laws as both a shield and a sword, where he seeks to not only avoid re-paying the promised return on the moneys provided to him, but he goes even further by attempting to avoid re-paying the principal which was loaned to him and which has not been repaid." *Id.* ¶ 9. Plaintiff also claimed that Defendant had engaged in similar tactics "with respect to a host of other lenders and investors." *Id.* ¶ 18; *see id.* ¶¶ 19-27.

On September 13, 2021, the trial court – "accepting the allegations of the [State C]omplaint as true and as amplified by the statements in [P]laintiff's [A]ffidavit" – granted in part and denied in part the motion to dismiss. *Kuriyan v. Schreiber*, No. 655936/2019, 2021 WL 4198093, at *4, *9 (N.Y. Sup. Ct. Sept. 13, 2021). Specifically, the court denied the motion to dismiss Plaintiff's causes of action for breach of contract, unjust enrichment, *quantum meruit*, and an equitable lien. *Id.* at *3-5, *7-9. The court otherwise granted the motion to dismiss. *Id.* at *9.

Defendant and Waterbridge appealed the trial court's order to the extent that it partially denied their motion to dismiss. Notice of Appeal, *Kuriyan*, No. 655936/2019,

Dkt. 68, https://iapps.courts.state.ny.us/nyscef/ViewDocument?docIndex= h0wsN1H3qCO7BO3Psgd9SQ== [https://perma.cc/LUR4-38S7]. On October 4, 2022, the First Department reversed. *Kuriyan v. Schreiber*, 175 N.Y.S.3d 504, 505 (1st Dep't 2022). It held that Plaintiff's non-dismissed claims should have been dismissed because the Five Loans "were, on their face, criminally usurious and, as such, void and unenforceable." *Id.* Because Plaintiff had not cross-appealed, the First Department directed that the State Complaint "should be dismissed in its entirety." *Id.* at 505-06.

On December 20, 2022, the First Department denied Plaintiff leave to appeal the First Department's decision to the New York Court of Appeals. *Kuriyan v. Schreiber*, No. 2022-04362, 2022 WL 17817727 (N.Y. 1st Dep't Dec. 20, 2022). On April 27, 2023, the New York Court of Appeals likewise denied Plaintiff leave to appeal. *Kuriyan v. Schreiber*, 209 N.E.3d 91 (N.Y. 2023).

### III. The Present Action

Plaintiff filed this action (the "Present Action") on March 21, 2023, asserting a single RICO claim against Defendant and Waterbridge. ECF No. 1 ¶¶ 83-88. After Defendant and Waterbridge moved to dismiss the initial complaint, ECF No. 33, Plaintiff filed the Amended Complaint on August 17, 2023, with Waterbridge no longer named as a defendant, Am. Compl. The Amended Complaint asserts two causes of action against Defendant: (1) a substantive RICO violation under 18 U.S.C. § 1962(c); and (2) participation in a RICO conspiracy under 18 U.S.C. § 1962(d). *Id.* ¶¶ 90-111.

In the Amended Complaint, Plaintiff accuses Defendant of having "made a pattern and practice of inducing unwitting parties[, including Plaintiff,] to loan him money at usurious rates, knowing that Defendant would not be required to repay such money because the courts would not enforce such loans." *Id.* ¶ 73; *see also id.* ¶ 80 ("[Defendant] intentionally

4

structured his transactions with [Plaintiff and others] with usurious elements to retain the option of invoking a usury defense."). Plaintiff also accuses Defendant of secreting funds for personal use, "pledging the same or partial interests in the same collateral – including[,] without limitation[, Defendant's] stock in WeWork – to secure multiple loans simultaneously from multiple parties, including the [Five] Loans to Plaintiff," and "making additional concessions, partial payments, and inducements of greater profits to delay legal action" until "the relevant statutes of limitations expire." *Id.* ¶¶ 74-76, 79; *see id.* ¶ 100 ("[Defendant] had no intention of ever repaying the [Five] Loans or properly pledging the collateral, or fulfilling [his] obligations to turn over the collateral upon the failure to repay the loans."). According to Plaintiff, Defendant's motion to dismiss the Prior Action "was the final act of [Defendant's] many schemes; [Defendant] used the court system to unveil his overriding plan to prevent Plaintiff's recovery of the money he had loaned [Defendant] based on the very usurious terms [Defendant] himself had proposed." *Id.* ¶ 64.

On November 13, 2023, Defendant moved to dismiss the Amended Complaint. Br. The motion is fully briefed. ECF Nos. 49 ("Opp."), 51 ("Reply").

## LEGAL STANDARD

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Nike, Inc. v. Already, LLC*, 663 F.3d 89, 94 (2d Cir. 2011) (quotation marks and citation omitted), *aff'd*, 568 U.S. 85 (2013). On a motion to dismiss under Rule 12(b)(1), a court accepts the complaint's allegations as true and draws all reasonable inferences in favor of the plaintiff. *Raymond Loubier Irrevocable Tr. v. Loubier*, 858 F.3d 719, 725 (2d Cir. 2017).

"To survive a motion to dismiss under Rule 12(b)(6), a complaint must allege sufficient facts which, taken as true, state a plausible claim for relief." *Keiler v. Harlequin*

*Enters. Ltd.*, 751 F.3d 64, 68 (2d Cir. 2014). In resolving a motion under Rule 12(b)(6), a court must accept the complaint's allegations as true and draw all reasonable inferences in favor of the plaintiff. *NexPoint Diversified Real Est. Tr. v. Acis Cap. Mgmt., L.P.*, 80 F.4th 413, 417 (2d Cir. 2023).

## DISCUSSION

Defendant makes four arguments for dismissal: (1) the Court lacks subject-matter jurisdiction under the *Rooker-Feldman* doctrine; (2) Plaintiff's claims are precluded under the doctrine of claim preclusion (also known as res judicata); (3) Plaintiff's claims are time-barred under RICO's statute of limitations; and (4) Plaintiff fails to state a RICO claim. Br.; Reply.

The Court starts with Defendant's *Rooker-Feldman* argument because it implicates the Court's subject-matter jurisdiction. *See Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999) ("Article III generally requires a federal court to satisfy itself of its jurisdiction over the subject matter before it considers the merits of a case."). After confirming its jurisdiction and thus denying the motion to dismiss under Rule 12(b)(1), the Court turns to Defendant's claim-preclusion argument. Because the Court agrees with Defendant that the RICO claims in the Amended Complaint are barred by claim preclusion, the Court grants the motion to dismiss under Rule 12(b)(6) without reaching Defendant's remaining arguments for dismissal.

### I. *Rooker-Feldman*

Defendant argues that the Court lacks subject-matter jurisdiction by virtue of the *Rooker-Feldman* doctrine. *See* Br. at 15-18; Reply at 6-8. The Court disagrees and therefore denies Defendant's motion to dismiss under Rule 12(b)(1).

The *Rooker-Feldman* doctrine "precludes a United States district court from exercising subject-matter jurisdiction in an action it would otherwise be empowered to adjudicate under a congressional grant of authority." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S.

280, 291 (2005). Its application "is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Id.* at 284; *see D.C. Ct. of Appeals v. Feldman*, 460 U.S. 462 (1983); *Rooker v. Fidelity Tr. Co.*, 263 U.S. 413 (1923). Thus, "four requirements must be met: (1) the federal-court plaintiff must have lost in state court; (2) the plaintiff must complain of injuries caused by a state-court judgment; (3) the plaintiff must invite district court review and rejection of that judgment; and (4) the state-court judgment must have been rendered before the district court proceedings commenced." *Edwards v. McMillen Cap., LLC*, 952 F.3d 32, 35 (2d Cir. 2020) (per curiam) (citation omitted).

Plaintiff concedes that the first and fourth requirements are satisfied here but contends that the second and third are not. *See* Opp. at 11-12. The Court agrees with Plaintiff that the third requirement is not met here, so *Rooker-Feldman* does not apply; therefore, the Court need not decide whether the second *Rooker-Feldman* requirement has been met as well.

In the Present Action, Plaintiff does not "invite district court review and rejection of th[e] judgment" in the Prior Action. *Edwards*, 952 F.3d at 35 (citation omitted). Indeed, Plaintiff expressly "accepts the decision of the [s]tate [c]ourt" in the Prior Action that the loans were usurious. Opp. at 11. Rather, Plaintiff argues that Defendant "abused the State Court and New York law by his scheme to borrow money knowing that New York law will not allow the loans to be enforced," and that this scheme "supports a RICO claim." *Id.* at 12. Because Plaintiff does not ask this Court to review and reject the judgment in the Prior Action, the third *Rooker-Feldman* requirement is not satisfied. *See, e.g.*, *Sykes v. Mel S. Harris & Assocs. LLC*, 780 F.3d 70, 94-95 (2d Cir. 2015) (*Rooker-Feldman* did not bar RICO

7

claim pertaining "not to the propriety of the state court judgments, but to the fraudulent course of conduct that defendants pursued in obtaining such judgments").

The Court rejects Defendant's arguments to the contrary. According to Defendant, "Plaintiff essentially asks this Court to reject his state-court loss by awarding him the same relief that he was denied in the Prior Action." Br. at 16. But the mere fact that Plaintiff now seeks many of the same remedies that he did in the Prior Action does not mean that Plaintiff is asking the Court to review and reject the state court's judgment in the Prior Action. Also, Defendant is wrong in asserting that "[a]ny finding in Plaintiff's favor in this action would necessarily involve an impermissible rejection of the Appellate Division's decision in the Prior Action as being wrong." *Id.* at 17. If anything, the state court's holding that the Five Loans were usurious *supports* Plaintiff's RICO claim, insofar as it comports with Plaintiff's theory that Defendant "use[d] the usurious terms he proposed as a mechanism to avoid repaying the amounts owed to Plaintiff and others." Am. Compl. ¶ 66. Therefore, it is simply untrue that "a finding in Plaintiff's favor would require this Court to set aside the state court's imposition of New York's legislatively mandated punishment for usury." Br. at 16.[1]

---

[1] Defendant's citations to nonbinding pre-*Exxon Mobil* cases are unavailing. *See* Br. at 15 (quoting *Pharr v. Evergreen Garden, Inc.*, 123 F. App'x 420, 422-23 (2d Cir. 2005) (summary order)); Reply at 6 (quoting *Padilla v. City of New York*, No. 04-cv-00257 (RCC), 2004 WL 2725047, at *2 (S.D.N.Y. Nov. 24, 2004); and *Harris v. N.Y. State Dep't of Health*, 202 F. Supp. 2d 143, 165 (S.D.N.Y. 2002)). "Prior to the Supreme Court's decision in *Exxon Mobil*, federal courts had applied the *Rooker-Feldman* doctrine expansively, and considered it effectively coextensive with doctrines of claim and issue preclusion." *Sung Cho v. City of New York*, 910 F.3d 639, 644 (2d Cir. 2018) (quotation marks and citation omitted). "In *Exxon Mobil*, however, the [Supreme] Court . . . considerably narrow[ed] the doctrine," and "[m]uch of [the Second Circuit's] previous case law was thus abrogated." *Id.* To the extent that the cases cited by Defendant rely on pre-*Exxon Mobil* understandings of *Rooker-Feldman* that are inconsistent with *Exxon Mobil*, those cases are outmoded. *Compare, e.g., Pharr*, 125 F. App'x at 423 ("*Rooker-Feldman* is at least as broad as the principles of *res judicata*, and applies, at a minimum, when claim preclusion would bar the federal action." (citing *Moccio v. N.Y. State Off. of Ct. Admin.*, 95 F.3d 195, 199-200 (2d Cir. 1996))), *with Exxon Mobil*, 544

This case is not one of "the limited circumstances" where the *Rooker-Feldman* doctrine deprives a district court of subject-matter jurisdiction. *Exxon Mobil*, 544 U.S. at 291. Consequently, the Court denies Defendant's motion to dismiss under Rule 12(b)(1).

## II. Claim Preclusion/Res Judicata

Of course, even if *Rooker-Feldman* does not divest a district court of subject-matter jurisdiction, "a federal court may be bound to recognize the claim- and issue-preclusive effects of a state-court judgment." *Id.* at 293. The Court agrees with Defendant that claim preclusion, also known as res judicata, precludes Plaintiff's RICO claims here and warrants dismissal on that basis.

### A. Principles of Claim Preclusion

"It is now settled that a federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered." *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984); *accord New York v. Mountain Tobacco Co.*, 942 F.3d 536, 543 (2d Cir. 2019). In this case, a New York state court rendered the judgment in the Prior Action, so the Court applies New York law on claim preclusion (although the Court cites federal decisions where appropriate, given that New York law and federal common law on claim preclusion are similar in many respects).

Under the doctrine of claim preclusion, "a party may not litigate a claim where a judgment on the merits exists from a prior action between the same parties involving the same subject matter." *In re Hunter*, 827 N.E.2d 269, 274 (N.Y. 2005); *accord Simmons v. Trans Express Inc.*, 170 N.E.3d 733, 736 (N.Y. 2021). "Under New York's transactional approach

---

U.S. at 283 (citing *Moccio* as an example of lower courts improperly "extend[ing the doctrine] far beyond the contours of the *Rooker* and *Feldman* cases").

to [res judicata], once a claim is brought to a final conclusion, all other claims arising out of the same transaction or series of transactions are barred, even if based upon different theories or if seeking a different remedy." *Josey v. Goord*, 880 N.E.2d 18, 20 (N.Y. 2007) (quotation marks and citation omitted). Thus, claim preclusion "applies not only to claims [that were] actually litigated but also to claims that could have been raised in the prior litigation." *In re Hunter*, 827 N.E.2d at 274.

Importantly, "[c]laim preclusion generally does not bar claims that are predicated on events that postdate the filing of the initial complaint." *Lucky Brand Dungarees, Inc. v. Marcel Fashions Grp., Inc.*, 590 U.S. 405, 414 (2020) (quotation marks and citation omitted); *accord Cohen v. Bd. of Educ. of E. Ramapo Cent. Sch. Dist.*, 443 N.Y.S.2d 170, 172 (2d Dep't 1981) (claim preclusion did not apply in second suit "alleg[ing] a separate and distinct cause of action . . . based upon events which occurred subsequent to the commencement of the prior proceeding"); *Hoover v. County of Broome*, 889 N.Y.S.2d 505, 2009 WL 1564730, at *2 (Sup. Ct. 2009) (unpublished table decision) ("Because the claim petitioner seeks to raise in this proceeding is based upon conduct by respondents that occurred during the pendency of the prior action, it is not barred by the doctrine of res judicata."). "[I]f, after the first suit is underway, a defendant engages in actionable conduct, [the] plaintiff may – but is not required to – file a[n amended or] supplemental pleading setting forth [the] defendant's subsequent conduct." *Maharaj v. Bankamerica Corp.*, 128 F.3d 94, 97 (2d Cir. 1997). The plaintiff's decision "not to do so is not penalized by application of res judicata to bar a later suit on that subsequent conduct." *TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 501 (2d Cir. 2014) (citation omitted).

That said, if the plaintiff *does* file an amended or supplemental pleading in the first suit, then the additional allegations are considered in deciding whether the claims in the

10

second suit were raised or could have been raised in the first suit. In other words, by filing an amended or supplemental pleading, a plaintiff "may bring events occurring after the filing of the complaint into the scope of the litigation." *SEC v. First Jersey Sec., Inc.*, 101 F.3d 1450, 1464 (2d Cir. 1996) (citation omitted); *see, e.g.*, *Proctor v. LeClaire*, 715 F.3d 402, 412-13 (2d Cir. 2013) (comparing the allegations of the second suit's complaint with the allegations in the first suit's amended complaint to determine the claim-preclusive effect of the final judgment in the first suit); *Cameron v. Church*, 253 F. Supp. 2d 611, 621-24 (S.D.N.Y. 2003) (same); *see also TechnoMarine*, 758 F.3d at 502 n.7 (the parties' settlement agreement "br[ought] within its ambit (and thus the ambit of the first litigation) claims existing as of the date of settlement and arising from the facts alleged in the original complaint"; consequently, "the operative date for *res judicata* purposes [wa]s the date of the settlement").

### B. Application

The Court holds that claim preclusion bars Plaintiff from bringing his RICO claims in the Present Action.

Every requirement for claim preclusion is satisfied here. There is "a judgment on the merits [that] exists from [the P]rior [A]ction." *In re Hunter*, 827 N.E.2d at 274; *see Kuriyan*, 175 N.Y.S.3d at 505-06 ("[T]he affirmative defense of usury . . . , in the absence of grounds for application of the doctrine of estoppel, is dispositive, as a matter of law, based on the allegations of the verified complaint itself. Accordingly, the causes of action at issue on this appeal should have been dismissed. As [P]laintiff has not appealed from the order under review insofar as it dismissed his remaining claims, the [State C]omplaint should be dismissed in its entirety."); *Strange v. Montefiore Hosp. & Med. Ctr.*, 450 N.E.2d 235, 236 (N.Y. 1983) ("[New York law] does not require that the prior judgment contain the precise words 'on the merits' in order to be given *res judicata* effect; it suffices that it appears from the judgment

11

that the dismissal was on the merits."). The Prior Action and the Present Action were "between the same parties," namely, Plaintiff and Defendant. *In re Hunter*, 827 N.E.2d at 274. The Prior Action and the Present Action involve "the same subject matter," that is, the Five Loans that Plaintiff issued to Defendant. *Id.* In other words, the RICO claims in the Present Action "aris[e] out of the same transaction or series of transactions" as the state-law claims in the Prior Action. *Josey*, 880 N.E.2d at 20 (citation omitted). Moreover, as Defendant notes (Br. at 10) and Plaintiff does not contest, New York state courts have concurrent subject-matter jurisdiction over civil RICO claims. *Tafflin v. Levitt*, 493 U.S. 455, 467 (1990); *Simpson Elec. Corp. v. Leucadia, Inc.*, 530 N.E.2d 860, 866 (N.Y. 1988). In short, Plaintiff's RICO claims "could have been raised in the prior litigation," so they are barred by claim preclusion here. *In re Hunter*, 827 N.E.2d at 274; *see Saud v. Bank of N.Y.*, 929 F.2d 916, 919 (2d Cir. 1991) ("As the district court correctly recognized, it does not matter [for claim-preclusion purposes] that a RICO claim was not expressly asserted in the [prior a]ction, for it is the facts surrounding the transaction or occurrence which operate to constitute the cause of action, not the legal theory upon which a litigant relies." (original brackets, quotation marks, and citation omitted)); *see also Beijing Neu Cloud Oriental Sys. Tech. Co. v. Int'l Bus. Machs. Corp.*, --- F.4th ----, 2024 WL 3529080, at *9 (2d Cir. July 25, 2024) ("Neu Cloud, having failed to bring its causes of action together in [a prior state-court] action despite possessing the ability to do so, is now barred [by claim preclusion] from asserting its [Defend Trade Secrets Act] claim.").

 Resisting this conclusion, Plaintiff argues that the Amended Complaint "contains certain critical allegations that were not made and could not have been made in the [Prior Action]: the allegations of a scheme that Defendant intended to and did take advantage of New York usury law – both with Plaintiff and with numerous third parties – to borrow money

12

on unenforceable terms, refuse to pay, and fall back on the usury defense in the New York courts when the creditors came to collect." Opp. at 8. Plaintiff contends that "this new issue" forestalls application of claim preclusion. *Id.* at 9.

The Court does not consider this issue to be "new" in the relevant sense. In passing, the Amended Complaint refers to the filing of Defendant's and Waterbridge's state-court motion to dismiss as "the final act of [Defendant's] many schemes" whereby Defendant "used the court system to unveil his overriding plan" to thwart Plaintiff from recovering the loans. Am. Compl. ¶ 64. But in its formal statement of Plaintiff's RICO causes of action, the Amended Complaint lists 12 RICO predicate acts – and the motion to dismiss the Prior Action is not one of them. *Id.* ¶ 103 (listing the RICO predicate acts, all consisting of emails sent to Plaintiff). Of those 12 acts, the most recent took place on August 23, 2019, *id.* ¶ 103(k), which was six weeks before Plaintiff filed the State Complaint, *see generally* State Compl. Insofar as all of the RICO predicate acts preceded the Prior Action, Plaintiff's RICO claims against Defendant "could have been raised" in the Prior Action. *In re Hunter*, 827 N.E.2d at 274; *see UBS Sec. LLC v. Highland Cap. Mgmt., L.P.*, 927 N.Y.S.2d 59, 65-66 (1st Dep't 2011) ("The proper inquiry for res judicata purposes is when [the plaintiff] could have *raised* a cause of action, not when it had enough evidence to prove the claim at trial."). To be sure, Plaintiff asserts that "[p]rior to the filing of that motion to dismiss and the subsequent dismissal of the [Prior] Action, the [RICO] cause of action was not ripe." Am. Compl. ¶ 63; *see id.* ¶ 108 (same). But "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Lundy v. Cath. Health Sys. of Long Island Inc.*, 711 F.3d 106, 113 (2d Cir. 2013) (citation omitted). Plaintiff's legal conclusion that its RICO causes of action were "not ripe" until Defendant and Waterbridge moved to dismiss the Prior Action, Am. Compl. ¶ 63, is belied by the fact that the RICO

13

predicate acts listed in the Amended Complaint do not include the motion to dismiss the Prior Action, *see id.* ¶ 103.

Even if Plaintiff could not have asserted his RICO claims until after Defendant and Waterbridge moved to dismiss in the Prior Action – in other words, even if Plaintiff's RICO claims "are predicated on events that postdate the filing of the initial complaint" in the Prior Action, *Lucky Brand*, 590 U.S. at 414 (citation omitted) – Plaintiff effectively amended the State Complaint by filing the Affidavit in response to the motion to dismiss. Under New York's rules of civil procedure, a party may formally submit a supplemental pleading "setting forth additional or subsequent transactions or occurrences." N.Y. C.P.L.R. § 3025(b); *see* Fed. R. Civ. P. 15(d) (same under the federal rules). Additionally, New York courts – unlike their federal counterparts – "may freely consider affidavits submitted by the plaintiff to remedy any defects in the complaint." *Davis v. S. Nassau Cmtys. Hosp.*, 46 N.E.3d 614, 618 (N.Y. 2015) (citation omitted); *cf. Roberts v. BroadwayHD LLC*, 518 F. Supp. 3d 719, 732 (S.D.N.Y. 2021) (in federal court, a plaintiff generally "is not permitted to interpose new factual allegations . . . in opposing a motion to dismiss" (citation omitted)). These affidavits "amplify the pleadings" and are considered alongside the pleadings in resolving a motion to dismiss. *M & E 73-75, LLC v. 57 Fusion LLC*, 128 N.Y.S.3d 200, 204 (1st Dep't 2020); *see, e.g., Pike v. N.Y. Life Ins. Co.*, 901 N.Y.S.2d 76, 82 (2d Dep't 2010) ("[I]n addition to the allegations asserted in the complaint, the facts alleged in [the] affidavit submitted in opposition to the defendants' motions [to dismiss] *must also be assumed to be true and considered in determining the motions*." (emphasis added)). In other words, although such affidavits are not formally styled as amended or supplemental pleadings, they can "bring events occurring after the filing of the complaint into the scope of the litigation" – and thus

14

can extend the claim-preclusion bar to encompass those events. *First Jersey*, 101 F.3d at 1464 (citation omitted).

In the Prior Action, the Affidavit clearly raised and presented the RICO-relevant facts for consideration by the trial court. At the outset, the Affidavit announced that it was intended "to *supplement* th[e] allegations contained within the [State] Complaint." Aff. ¶ 1 (emphasis added). In turn, the Affidavit accused Defendant of "employing the strategy of offering to take loans under terms that would otherwise be unenforceable as a tactic to avoid paying his debts and the interest associated therewith," *id.* ¶ 8, and of "attempting to use the usury laws as both a shield and a sword" by "seek[ing] to not only avoid re-paying the promised return on the moneys provided to him, but [also] avoid re-paying the principal," *id.* ¶ 9. The Affidavit also asserted that Defendant had engaged in similar tactics "with respect to a host of other lenders and investors." *Id.* ¶ 18. These factual allegations were effectively incorporated into the State Complaint through the Affidavit, which the trial court expressly considered in ruling on the motion to dismiss. *See Kuriyan*, 2021 WL 4198093, at *4 (the trial court "accept[ed] the allegations of the [State C]omplaint as true and as amplified by the statements in [the A]ffidavit"). In other words, by filing the Affidavit in the Prior Action, Plaintiff brought the RICO-relevant facts "into the scope of the" Prior Action and Plaintiff is thus precluded from asserting RICO claims in the Present Action. *First Jersey*, 101 F.3d at 1464 (citation omitted).

Plaintiff also argues that "much of the information regarding Defendant's use of the same schemes on third parties was not available to Plaintiff during the [Prior Action] and was therefore not alleged there. For example, the [Amended Complaint] contains allegations of similar victims that Plaintiff simply had no information about during the [Prior Action]." Opp. at 9. But Plaintiff attested in the Affidavit that Defendant's schemes impacted third

15

parties. Plaintiff stated that after "conduct[ing] much independent research regarding" Defendant, Plaintiff had "come to learn" that Defendant "has a long history of deceit, lies[,] and financial misconduct," Aff. ¶ 7, including "a pattern and practice of defrauding lenders and investors by employing the strategy of offering to take loans under terms that would otherwise be unenforceable as a tactic to avoid paying his debts and the interest associated therewith," *id.* ¶ 8. Even if Plaintiff later discovered additional lenders and investors, "the mere discovery of fresh evidence is no answer to the defense of res judicata when raised in a subsequent, separate cause of action." *Statter v. Statter*, 143 N.E.2d 10, 13 (N.Y. 1957). To be sure, "[e]xceptions to this rule exist when the evidence was either fraudulently concealed or when it could not have been discovered with due diligence." *Saud*, 929 F.2d at 920. In this case, however, Plaintiff never explains how the information about other alleged victims of Defendant's schemes "was either fraudulently concealed or . . . could not have been discovered with due diligence." *Id.* That Plaintiff now comes forth with more evidence consistent with the assertions in the Affidavit is not an excuse to avoid claim preclusion. *See Statter*, 143 N.E.2d at 13.

Finally, Plaintiff complains that "the sequence of events in the [Prior Action] resulted in the fraud claim in that case never being considered" because the trial court dismissed the claim as duplicative of Plaintiff's breach-of-contract claim. Opp. at 9; *see Kuriyan*, 2021 WL 4198093, at *7-8. Then, on appeal, the First Department dismissed the breach-of-contract claim "without reviving the fraud claim," such that "the fraud claim was never litigated on its merits at all." Opp. at 9; *see Kuriyan*, 175 N.Y.S.3d at 505-06. Even if true, this argument is irrelevant. What matters for claim preclusion – as opposed to issue preclusion, "which precludes a party from relitigating an issue *actually* decided in a prior case and necessary to the judgment," *Lucky Brand*, 590 U.S. at 411 (emphasis added); *accord Simmons*, 170 N.E.3d

16

at 737 – is that Plaintiff *could* have raised his RICO claim in the Prior Action, but did not do so. Claim preclusion therefore prevents Plaintiff from raising the RICO claim in the Present Action.

## CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss under Rule 12(b)(1) is DENIED, but Defendant's motion to dismiss under Rule 12(b)(6) is GRANTED. The Clerk of Court is respectfully directed to terminate the motion at ECF No. 44 and CLOSE the case. Also, the Clerk of Court is respectfully directed to amend the official caption to conform with the caption above.

Dated: July 25, 2024
       New York, New York

                                        SO ORDERED.

                                        *Jennifer Rochon*
                                        JENNIFER L. ROCHON
                                        United States District Judge